UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN

RAMON ORTEGA, and all others similarly
situated under 29 U.S.C. § 216(b),

    Plaintiff,
v.

BEL FUSE, INC., ARRAY CONNECTOR
CORPORATION, BILL MCPHERSON,

    Defendants.
_____/

## DEFENDANT, BEL FUSE, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, Bel Fuse, Inc. ("BEL FUSE") hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, on Plaintiff, RAMON ORTEGA's, claim for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), Count II. As set forth herein, the undisputed facts establish that Plaintiff was exempt from the overtime provisions of the FLSA as both a learned professional, a computer employee and a combination of both exemptions. Plaintiff cannot prevail on his FSLA claim as a matter of law, Summary Judgment in favor of Defendant Bel Fuse is proper.

## PRELIMINARY STATEMENT

On June 3, 2015, the Plaintiff filed a lawsuit seeking unpaid overtime payments together with liquidated damages, interest, attorneys' fees, and costs against the Defendant, Bel Fuse, under the FLSA, 29 U.S.C. §207, *et. seq.* ("FLSA") *See* Amended Complaint D.E. 41. Specifically, Plaintiff brought one count (Count I) of "Federal Overtime Wage Violation" against Array Connector and Bill McPherson, in his individual capacity, and one count (Count II) of "Federal Overtime Wage Violation" against

Defendant Bel Fuse. (Amend. Compl. ¶¶ 1-8).  Here, Bel Fuse seeks Summary Judgment against Plaintiff for Count II of the Amended Complaint, and based on its Fifth and Ninth Affirmative Defenses regarding the Learned Professional Exemption and the Computer Exemption. (DE 49).

By way of background, Defendant, Bel Fuse, Inc. purchased co-defendant Array Connector Corporation on or about August 19, 2013. Bel Fuse asserts that any alleged damages Plaintiff claims to have suffered prior to this date are not the liability of Bel Fuse, Inc.

The undisputed facts of the case show it is clear that Plaintiff was properly exempt under the computer and learned professional exemptions of the FLSA exemptions set forth in Section 213(a)(1) and (a)(17) of the Act. During the period relevant to this lawsuit, Plaintiff was in the position of IT Manager/Network Administrator and engaged in managing all essential functions of the Defendant's hardware, software and networks, including diagnosing, troubleshooting, analyzing hardware and software. During employment, Plaintiff was responsible for testing the Defendant's systems for abnormalities, ensuring they were functioning properly and exercising independent judgment to troubleshoot them. Contrary to Plaintiff's assertions that he is a non-exempt employee, even a cursory comparison between the computer professional exemption contained in the FLSA and Plaintiff's admitted job duties reflect that Plaintiff falls squarely within the Congressionally-intended profession anticipated under the computer exemption. Since there is no disputed issue of fact about the duties Plaintiff performed, and an evaluation of those duties reveal that they amount to exempt responsibilities under the FLSA, Plaintiff's claims fail, and summary judgment is proper.

## **FACTUAL BACKGROUND**

Plaintiff, Ramon Ortega, worked at Bel Fuse as an IT Manager and/or Network Administrator/Engineer II ("IT Manager") from August 2013 - March 18, 2014. (*See* SOMF ¶¶4, 6, 18, 27).

***Ortega's Educational Experience***

Prior to Plaintiff's employment, he amassed an educational background which included:

- Electrical Engineer (Bachelors-of-Science-degree-equivalent to Electrical Engineering) in 1981, from Camagüey University in Cuba; (SOMF ¶1)
- Graduation as a programmer for Windows Visual Basic in 1995, from Camagüey University in Cuba; (SOMF ¶1)
- Graduate in Electronic Tensometry from Havana University in 1983; (SOMF ¶1)
- Graduate as Electrical Equipment Assembly from Politecnical Institute in Cuba in 1979; (SOMF ¶1)
- Graduate as Lathe Operator from Las Tunas Politecnical Institute in Cuba in 1972; (SOMF ¶1)

Plaintiff's education also covered courses in computer science, such as operation of computer hardware and software. (SOMF ¶1) Additionally, Plaintiff's prior employment experience encompassed a six-year employment position where he repaired, performed maintenance on, and installed PCs, as well as installation and configuration of software for PCs. (SOMF ¶1)

***Ortega's Responsibilities as IT Manager with Defendants***

Plaintiff began his employment in the position of IT Manager under the ownership of Defendant Array Connectors, and continued the same duties and position when Defendant Bel Fuse acquired Array Connectors through purchase in August 2013. (SOMF¶¶17-18). The relevant requirements for the position, as stated in the job description, included:

> AA Degree or equivalent technical training and/or experience, Microsoft Certified Professional desired; Minimum of 5 years related experience; through knowledge of Windows NT 4.0 or greater; Comprehensive knowledge of networking hardware such as bridges, routers, gateways, Pc's, switched, and multi-line phone systems; working knowledge of UNIX…

(SOMF ¶5)

Plaintiff acknowledges that the duties and responsibilities outlined in his job description for Network Administrator and Engineer are accurate descriptions of his responsibilities. (SOMF ¶5). Plaintiff's position is summarized in the job description:

> Manages and coordinates the company data and voice communications network and related functions to include PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing…

(SOMF ¶1)

Additionally, according to the job description, Plaintiff's acknowledged responsibilities also involve, in part:

- Makes recommendations for purchase or upgrade of data and voice networks
- Ensures proper installation and maintenance of network-based software
- Establishes and ensures full tape backup of all file servers…
- Identifies and implements enhancements ot the Array Connector Corporation network
- Provides and coordinates company operating system (Visual) support and maintenance

(SOMF ¶5). During his deposition, Plaintiff elaborated on duties and responsibilities as IT Manager:

- Managing and coordinating company data and voice communications network and related functions to include PCs, terminals and telephones, cable installation, network system planning, and monitoring, testing, and servicing. (SOMF ¶7)
- Installation of drivers; (SOMF ¶9)
- Analyzing and diagnosing problems with security cameras, including issues with the DVR, safety box, and tapes; (SOMF ¶10),

- Implementation of a bar code system for work orders, and linking it to visual manufacturing and the punch clock (SOMF ¶11)
- Troubleshoot, analyze, and solve problems relating to Defendant's systems (SOMF ¶11);
- Installation of the punch clock system and all problems with the clock, including software problems; (SOMF ¶12);
- Analyze, diagnose, and resolve all Defendant's virus issues (SOMF ¶13);
- Respond to help desk requests from employees to perform trouble-shooting services; (SOMF ¶17)
- Maintain and change electronic keypad access to facilities (SOMF ¶17);
- Development and creation of and maintenance of a second, "test" database as a fail-safe measure due to his concerns about new employees damaging the production database (SOMF ¶18);
- Everything with the network, including control of Defendant's database, email, email server, camera, security cameras, help desk, alarm system, and everything to do with electricity (SOMF ¶19);
- Administer the email server, file server, software and test backups of servers, (SOMF ¶20);
- Testing of the system and network; (SOMF ¶22);

During Plaintiff's employment, he used his knowledge from on-the-job training, as well as self-study, to perform the duties for his position. (SOMF ¶8, 22). He was free to exercise independent discretion relating to his duties in his position. (SOMF ¶8, 22).

*Plaintiff's Work Schedule*

During his employment, Plaintiff had a work schedule from 7:00 a.m. until approximately 3:30 p.m. or 4:00 p.m. which amounted to nine hours per day, five times per week, Monday through Friday. (SOMF ¶32). Plaintiff's hours and pay during employment are reflected in a pay history, based on records maintained by the Defendants. (SOMF ¶36). During his employment, Plaintiff did not maintain a record of his hours or track his hours, and he is not certain of the hours he worked per week. (SOMF ¶36).

Defendant's Handbook required that "all overtime must receive the supervisor's prior authorization," and while Plaintiff received the handbook and signed for receipt, he

never asked permission for working additional hours, nor did he ever make any complaints during his employment that he was not being paid properly, despite the Defendant maintaining a complaint procedure, which he knew existed (SOMF ¶32-34).

*Plaintiff's Salary*

It is undisputed that during the period relevant to Plaintiff's claims in this lawsuit, he was paid a biweekly salary. (SOMF ¶24-25). Specifically, in 2012 he earned $44,422.00, in 2013, he earned $54,999.88, and during the period he worked in 2014, he earned $15,396.00. (SOMF ¶27-29). Although Plaintiff may have worked different amounts of hours per week, where some weeks he worked thirty hours and some weeks he worked sixty hours, he always got paid the same amount. (SOMF ¶24, 30). When Plaintiff received a raise, it would result in an increase in his annual salary. (SOMF ¶31).

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW – SUMMARY JUDGMENT

The Court is well acquainted with the standard for summary judgment. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is granted if all of the probative materials of record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of showing that there is no genuine issue of fact. *Id.* "The burden has two distinct components: an initial burden of production which shifts to the non-moving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.* The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by

showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden. *Graham v. State Farm Mu. Ins. Co.,* 193 F.3d 1274, 1281-1282 (11th Cir. 1999).

The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. *See* Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the task, considering the evidence in the light most favorable to Plaintiff, is whether there is evidence on which the trier of fact could reasonably find a verdict in its favor. *Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). As more fully explained below, there is no genuine dispute as to any material fact in this case and Defendant is entitled to judgment as a matter of law on Plaintiff's Count II.

## II. THE RECORD UNDISPUTEDLY ESTABLISHES PLAINTIFF WAS EXEMPT FROM THE FLSA'S OVERTIME PROVISIONS PURSUANT TO THE LEARNED PROFESSIONAL AND COMPUTER EXEMPTIONS

### A.   FLSA generally

In 1938, "Congress passed the FLSA during the Great Depression to protect workers from overbearing practices of employers with greatly unequal bargaining power over them." *Billingsley v. Citi Trends, Inc.*, 948 F. Supp. 2d 1287, 1299 (N.D. Ala. 2013) *aff'd*, 560 Fed. Appx. 914 (11th Cir. 2014). The Act requires employers to pay workers at least the minimum wage for each hour worked and overtime compensation when an employee works more than forty hours in a week, unless the employee is exempt as provided by the statute. In passing the FLSA, Congress had three stated purposes: (1) to prevent employees from agreeing to work abnormally long hours and giving

employers an advantage over unions, which were negotiating hours limitations in collective bargaining agreements; (2) to spread work among more workers by making employers pay a penalty for having too few workers to perform the necessary work; and (3) to protect against workplace injuries caused by tired workers. *Mechmet v. Four Seasons Hotel, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987). "In other words, the statute was designed to 'aid the unprotected, unorganized and lowest paid of the nation's working population,' that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (quoting Brooklyn *Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)).

However, the Eleventh Circuit Court of Appeals has cautioned that "[t]o read the FLSA blindly, without appreciation for the social goals Congress sought, would do violence to the FLSA's spirit." *Nicolson v. World Business Network, Inc.,* 105 F.3d 1361, 1364 (11th Cir. 1997). While courts must construe exemptions narrowly they should do so "without diminishing the spirit of [the] parent legislation." *Gregory v. First Title of America*, Inc., 555 F.3d 1300, 1307 (11th Cir. 2009); *Mechmet*, 825 F.2d at 1178 (narrow construction "generalization" is "at best a tie breaker (and not even that, if some offsetting 'canon of construction' is in play, as normally there will be")).

As recognized by our sister court in the Middle District of Alabama, "a defendant may prevail on a motion for summary on an affirmative defense, such as an entitlement to an exemption under the FLSA, when it has produced "credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Watkins v. City of Montgomery*, 919 F. Supp. 2d 1254, 1256-57 (M.D. Ala. 2013). Under the FLSA, exemptions are "to

be applied only to those clearly and unmistakably within the terms and spirit of the exemption." *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1269 (11th Cir. 2008). Employees who perform a combination of exempt duties as set forth in the regulations, such as professional and computer employees may qualify for combination exemption; "in other words, work that is exempt under one section of this part will not defeat the exemption under any other section." 29 C.F.R. § 541.708; *Pinillia v. Northwings Accessories Corp.*, 07-21564-CIV, 2007 WL 3378532, at *7 (S.D. Fla. 2007) Here, based on an evaluation of Plaintiff's duties, responsibilities, education, and discretion, he clearly falls within the learned professional exemption, the computer exemption, or a combination of the exemptions.

B. Learned Professional Exemption

The FLSA provides exemptions from coverage for certain employees falling within exemption categories. Section 213(a)(1) of the FLSA provides that the FLSA's minimum wage and overtime requirements:

. . . shall not apply with respect to:

* * * *

>   any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel ....)

*See* 29 U.S.C. § 213(a)(1).

Under the learned professional exemption:

>   The employee must be compensated on a ***salary or fee basis*** (as defined in the regulations) at a rate not less than $455 per week; The employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which

> includes work requiring the consistent exercise of discretion and judgment; The advanced knowledge must be in a field of science or learning; and
> The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

*See also* 29 C.F.R. §541.301(a)(1)-(3). As recognized by our sister court, in the U.S. District Court for the Northern District of Florida, "employees making at least $ 455.00 per week qualify for the exemption so long as their primary duties meet one of two classifications: the use of advanced knowledge or the engagement in artistic or creative endeavors." *Talbott v. Lakeview Ctr., Inc.*, 3:06CV378/MCR/MD, 2008 WL 4525012, at *7 (N.D. Fla. 2008). The learned professional exemption will apply if the employee's "primary duty requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(i).

Under the regulations, "the advanced knowledge is "generally use[d] ... to analyze, interpret or make deductions from varying facts or circumstances." *Id.* The regulations make clear that the advanced knowledge must not merely be held by the employee but it also must be required for the employee to perform the job." *Id.*  Three elements are pertinent to this exemption, according to the regulations: "(1) [t]he employee must perform work requiring advanced knowledge; (2)[t]he advanced knowledge must be in a field of science or learning; and (3) [t]he advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." § 541.301(a).

It is undisputed that during the applicable period of Plaintiff's employment, he was compensated on a salary basis of more than $455.00 per week. (SOMF ¶ 28-35). It is also undisputed that his thirteen-year, prolonged experience Plaintiff obtained from on-the-job training, as well as his own educational background, were crucial in his performance of his duties. (SOMF ¶ 2).  In fact, they were required: the Plaintiff's job description mandated five-years' related experience as a basic qualification for his position of IT Manager. (SOMF ¶ 5).

It is also undisputed that during the applicable period of Plaintiff's employment, his primary duty was the performance of work which required knowledge that was intellectual in nature, including testing network systems, making decisions about how to handle backups, acting as administrator of the email server, controlling databases, and creation of a test database as a failsafe measure. (SOMF ¶ 16-23).  This work included consistent exercise of discretion and judgment (SOMF ¶ 12,18, 20)  – constituting use of advanced knowledge under the regulation.

Additionally, it is undisputed that Plaintiff's advanced knowledge was in a field of science, customarily acquired by specialized intellectual instruction, as outlined in the regulations. Plaintiff's advanced knowledge includes courses in ***computer science***, including operation of database and software. (SOMF¶1; ***emphasis added***). Like the requirement for the position that the candidate must have prior, related experience of at least five-years, the position also required that the candidate have a background in computer science, including: AA Degree or equivalent technical training and/or experience; Microsoft Certified Professional was desired; a minimum of 5 years related experience; thorough knowledge of Windows NT 4.0 or greater; comprehensive

knowledge of networking hardware such as bridges, routers, gateways, PC's, switches and multi-line phone systems; and a working knowledge of UNIX. *Id.*; SOMF¶5. Additionally, Plaintiff testified he learned to complete his job during his thirteen years of on-the-job training in areas of computer science with Defendant, and from researching. (SOMF¶2). As such, it is apparent that based on Plaintiff's own, undisputed testimony of the responsibilities of his position, combined with the requirements of the position, Plaintiff is exempt under the learned professional exemption, and thus, Summary Judgment in Defendant's favor is proper.

  C. <u>The Computer Employee Exemption</u>

The FLSA's computer professional exemption is applicable to "any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker," whose primary duties include:

> (A) the application of systems analysis techniques and procedures to determine hardware, software, or system functional specifications…;
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or…
> (D) a combination of duties described in subparagraphs (A), (B), and (C) …,
> and who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. 213(a)(17).

The interpretive guidelines from the Department of Labor further expand on this exemption stating that under section 13(a)(17) of the Act, the exemption applies only to computer employees whose primary duty consists of:

  (1) The application of systems analysis techniques and procedures,

> including consulting with users, to determine hardware, software or system functional specifications;
> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or,
> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

*See* 29 C.F.R. § 541.400.

When analyzing the primary duties of an employee, courts consider factors including, but not limited to, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700. This analysis looks at both the compensation of the employee and his primary duties. *See* 29 C.F.R. § 541.400. This Court holds that the central inquiry regarding application of an exemption is whether the employee's "primary duty" was largely based on the description provided in the exemption. *Brillas v. Bennett Auto Supply, Inc.*, 675 F. Supp. 2d 1164, 1168 (S.D. Fla. 2009); *see also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). The Eleventh Circuit holds that job duties such as code writing, designing, developing, and modifying programs, design, development, and analysis of a computer system is an essential function of the computer professional exemption under the FLSA. *See Bergquist v. Fid. Info. Servs., Inc.*, 399 F. Supp. 2d 1320, 1329 (M.D. Fla. 2005) aff'd, 197 F. App'x 813 (11th Cir. 2006); *see also Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316 (S.D. Fla. 2005).

The term "primary duty" means the employee's "principal, main, major or most important duty" and "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(a)-(b). Regarding an employee's "primary duty," the factors to be considered, but are not limited to, the following: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Campbell v. Kannapolis City Sch. Bd. of Educ.*, 55 F. Supp. 3d 821, 823-24 (M.D.N.C. 2014).

There is no dispute as to Plaintiff's duties while he was employed. (SOMF ¶5). As such, based on an examination of these duties, it is apparent that his undisputed responsibilities fall within the duties listed by Congress for an exempt computer professional.

During his deposition, Plaintiff himself testified he considered himself to be the manager of the IT Department, which encompassed his primary duties. (SOMF¶ 6). Not only did Plaintiff testify that his position required that he was "in charge of everything with the network," including "database, email, email sever, camera, security cameras, help desk, alarm system, and electricity," (SOMF 22-23),  but he also had the responsibilities and independent discretion to develop and create a test database, (SOMF 20), analyzing and diagnosing any problems with the security cameras, such as any issues with the DVR, safety box and tapes (SOMF 12), and "manage and coordinate the company data and voice communications network and related functions

to include PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing," (SOMF 21). In addition, Plaintiff was able to decide how to test the system and the network to make sure it was running properly, and nobody had to instruct him on how to do this process – he knew from the training he had on the job. (SOMF 26). As such, it is apparent that these responsibilities, which include development, analysis, creation, and testing of computer systems and programs fall within the confines of the computer exemption contemplated by the FLSA, that these duties were his primary duty, and he enjoyed independent discretion to perform these duties.

In *Campbell*, the US Court for the Middle District of North Carolina recognized an employee as computer exempt when he was responsible for monitoring the servers to make sure they were operating properly, and fix network issues, all without requesting approval for the majority of his duties. *Campbell v. Kannapolis City Sch. Bd. of Educ.*, 55 F. Supp. 3d 821, 823-24 (M.D.N.C. 2014). Similarly to the employee's responsibilities in *Campbell*, Plaintiff's responsibilities involved "maintain server configurations," (SOMF 9), as well as manage and coordinate the company data and voice communications network and related functions to include PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing, (SOMF 7) – with independent discretion, including determining how to best handle the Defendant's backup, (SOMF 24). *Id.*; *See Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1318 (S.D. Fla. 2005)(holding Plaintiff, a network engineer, was an exempt employee pursuant to the FLSA's computer exemption where his responsibilities included "comprehending and understating abstract ideas … and

understanding of network characteristics and the standards that are used in the network…knowledge of routing and switching… consulting with employees on network issues, designing software and implementing to system, determining network equipment, and making recommendations regarding hardware and software.")

In *Bergquist*, the Eleventh Circuit recognized an employee was exempt under the computer exemption when he planned out a program, tested a program, and completed the general maintenance of a program. *Bergquist v. Fid. Info. Services, Inc.*, 399 F. Supp. 2d 1320, 1331 (M.D. Fla. 2005) aff'd, 197 Fed. Appx. 813 (11th Cir. 2006). Similar to the employee in *Bergquist*, here, Plaintiff's duties included that of creating a time clock system, troubleshooting the system, testing the system, performed maintenance to databases, and made recommendations on software, including data and voice networks (SOMF ¶9, 14, 22). *Bergquist,* 399 F. Supp. 2d at 1331. As such, like the employee in *Bergquist* who clearly fell within the parameters of the computer exemption, so too does Plaintiff.

As such, based on Plaintiff's salary received and independent discretion to perform duties amounting to design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, Plaintiff is an exempt employee under the computer exemption test. Therefore, Summary Judgment in favor of Defendant is proper.

D.   <u>Combined Exemption</u>

As recognized by this Honorable Court, and under 29 C.F.R. § 541.708, "if an employee's primary duty involves a combination of different kinds of exempt work, that employee is exempt from the FLSA's overtime wage requirements." *Pinillia v.*

*Northwings Accessories Corp.,* 07-21564-CIV, 2007 WL 3378532, at *10 (S.D. Fla. 2007). Specifically, in *Pinillia*, when evaluating an exemption to FLSA, the Court found that, though there was a genuine issue as to whether the employee's primary duty fell under the executive exemption, the employer was still entitled to summary judgment under the combination exemption, because when the employee was not performing exempt executive work, he was performing exempt professional work. *Id.* Here, too, to the extent this Honorable Court concludes that there is any time where Plaintiff did not perform exempt work under the learned professional exemption, it is clear that the work was performed under the computer exemption, and vice versa. Therefore, Summary Judgment on behalf of the Defendant relating to the claims in Count II is proper under the combined exemption.

## CONCLUSION

WHEREFORE, based upon the arguments and case law cited above, along with the statement of undisputed facts filed by Defendant, it is apparent that Plaintiff is either exempt under the learned professional exemption, the computer exemption, or a combination of the two exemptions, making Plaintiff exempt from overtime pay. As such, Defendant respectfully request that summary judgment be entered in their favor and against Plaintiff as Count II.

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic filing on November 17, 2015 on all counsel or parties of record on the Service List below.

        s/Lindsey Wagner
        Cathleen Scott, Esq.
        Florida Bar No. 135331
        Primary e-mail: CScott@scottwagnerlaw.com
        Secondary e-mail: mail@scottwagnerlaw.com

Lindsey Wagner, Esq.
Florida Bar No. 86831
Primary e-mail: LWagner@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Stephanie Cagnet Myron, Esq.
Primary e-mail: SMyron@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Florida Bar No. 88973
SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone:   (561) 653-0008
Facsimile:    (561) 653-0020
Secondary Address:  101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com

## **SERVICE LIST**
## **CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN**

J.H. Zidell, Esq.
Florida Bar Number: 10121
J.H. Zidell, P.A.
Attorneys for Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: jgarrett.jhzidellpa@gmail.com
*Attorneys for Plaintiff*

Cheryl L. Wilke, Esq.
Florida Bar No. 893780
cwilke@hinshawlaw.com
Mary Beth Ricke, Esq.
Florida Bar No. 107213
mricke@hinshawlaw.com
Daniel A. Krawiec, Esq.
Florida Bar No. 59136
dkrawiec@hinshawlaw.com
*Attorneys for Array Connector Corporation &*
*Bill McPherson*