UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN**

RAMON ORTEGA, and all others similarly
situated under 29 U.S.C. § 216(b),

    Plaintiff,

v.

BEL FUSE, INC.,
ARRAY CONNECTOR CORPORATION, and
BILL MCPHERSON,

    Defendants.
_____/

**DEFENDANT BEL FUSE, INC.S' STATEMENT OF UNDISPUTED MATERIAL FACTS**

COMES NOW, the Defendant, BEL FUSE, INC., by and through the undersigned attorney, hereby files this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment in their favor against Ramon Ortega.

**I.  Mr. Ortega's Education and Experience**

1. Mr. Ortega's education and qualifications include:

    a. Electrical Engineer (Bachelors-of-Science-degree-equivalent to Electrical Engineering) in 1981, from Camagüey University in Cuba;

    b. Graduation as a programmer for Windows Visual Basic in 1995, from Camagüey University in Cuba;

    c. Graduate in Electronic Tensometry from Havana University in 1983;

    d. Graduate as Electrical Equipment Assembly from Politecnical Institute in Cuba in 1979;

    e. Graduate as Lathe Operator from Las Tunas Politecnical Institute in Cuba in 1972;

His education includes courses in computer science, which covers the workings and operation of computer hardware and software. Additionally, Plaintiff's prior work experience included a six-year position where he repaired, performed maintenance, and installed PCs, as well as installation and configuration of software for PCs. (See Resume, Exhibit 1, See true and correct copy of Educational Credentials, attached hereto as Exhibit 2); (See true and correct copy of Deposition of Ramon Ortega, attached hereto as Exhibit 3, Pg. 61, Ln. 1-Pg. 66, Ln. 24).

2. During Mr. Ortega's 13 year combined-employment with both Defendants, he learned how to do his job as Director of IT from on-the-job training, from "Googling," from researching, and from analyzing and trouble shooting. (See Ortega Deposition, Exhibit 3, Pg. 130-131, Ln. 3-12).

## II. Employment with Array

3. Ramon Ortega began employment with Array Connector on or about November 6, 2000. (See true and correct copy of Ramon Ortega's Resume, attached hereto as Exhibit 1).

4. During his employment, Mr. Ortega held multiple positions, until he was promoted to IT Manager and Engineer II (also called network administrator) (See Resume, Exhibit 1; See also true and correct copy of Ortega's responses to

    Interrogatories, No. 9, attached hereto as Exhibit 4; See true and correct copy of Deposition of 30(b)(6), Pg. 13, Ln. 12-20[1]).

5. Mr. Ortega's job description as Network Administrator and Engineer II specifically stated that the position was an "exempt" position under the Fair Labor Standards Act. The summary of his position states he "manages and coordinates the company data and voice communications network and related functions to include PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing…" (See true and correct copy of Job Description, attached hereto as Exhibit 5; See 30b6 deposition, Pg. 30, Ln. 11-Pg. 32, Ln. 11). The responsibilities outlined in the job description include, in part:

> makes recommendations for purchase or upgrade of data and voice networks; Ensures proper installation and maintenance of network-based software; Establishes and ensures full tape backup of all file servers…; Identifies and implements enhancements ot the Array Connector Corporation network; Provides and coordinates company operating system (Visual) support and maintenance

The relevant requirements, outlined in the job description include:

> AA Degree or equivalent technical training and/or experience, Microsoft Certified Professional desired; Minimum of 5 years related experience; through knowledge of Windows NT 4.0 or greater; Comprehensive knowledge of networking hardware such as bridges, routers, gateways, Pc's, switched, and multi-line phone systems;  working knowledge of UNIX…

The parties do not dispute the duties contained on his job description. (See Interrogatory Responses No. 13, Exhibit 4; See 30b6 deposition, Pg. 32, Ln. 12,-16).

---

[1] Defendant ordered the final transcript of the Fed. R. Civ. P. 30(b)(6) deposition to be provided by today, but have not yet received the final copy as the date of filing. Defendant will file a supplement Exhibit upon receipt of the transcript.

6. Mr. Ortega's resume reflects his position title with Array was IT Manager/Engineer II, but Ortega acknowledged during his deposition that his title could also include network administrator. (See true and correct copy of Deposition of of Ramon Ortega, attached hereto as Exhibit 3, Pg. 53, Ln. 11-21; See also Resume, Exhibit 1).

7. Mr. Ortega's duties as Network Administrator and Engineer II included managing and coordinating the company data and voice communications network and related functions to include PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing. Mr. Ortega would also manage and coordinate the facilities and maintenance requirements for the corporation. (See true and correct copy of Job Description, attached hereto as Exhibit 5; See Ortega's deposition, Exhibit 3, Pg. 67 Ln. 4 – Pg. 68 Ln. 22).

8. During his employment, Mr. Ortega acknowledged he used his knowledge from on the job training and had discretion relating to his duties in his position. He acknowledged he had the authority to make recommendations to the owner of Array Connector, Bill McPherson, for a new program to conduct backups, which was called Veritas, which were accepted. (See Ortega's deposition, Exhibit 3, Pg. 10, Ln. 3-13).

9. During his employment, Mr. Ortega's responsibilities also included installation of programs such as: CAD, auto CAD, Microsoft Office, Adobe Acrobat Professional and other software on the computers. (See Ortega's deposition, Exhibit 3, Pg. 27, Ln. 19 – Pg. 28 Ln. 5). He used his knowledge, self-study, and on-the-job training to complete the installation of the software according to end-user

requirements, and remained responsible for updating the software and hardware, as needed, which included installation of drivers. (See Ortega's deposition, Exhibit 3, Pg. 44, Ln. 3-Pg. 45, Ln. 12; See 30b6 deposition, Pg. 18 Ln. 3-12). Mr. Ortega would make recommendations and requests for certain licenses for these programs, and when his request was rejected, he was able to create a "work around" for the production and development of software to install the programs. (See Ortega's deposition, Exhibit 3, Pg. 27, Ln. 8-Pg. 29, Ln. 5; See 30b6 deposition, Pg. 14, Ln. 2-9, Pg. 21, Ln. 6-19).

10. During his employment, Mr. Ortega's responsibilities included analyzing and diagnosing any problems with the security cameras, such as any issues with the DVR, safety box, and tapes. (See Ortega's deposition, Exhibit 3, Pg. 38, Ln. 1-22).

11. During his employment, Mr. Ortega had discretion to and did implement a bar code system for work orders, and troubleshooted, analyzed and solved any problems relating to the system. (See Ortega's deposition, Exhibit 3, Pg. 38, Ln. 25 - Pg. 8). Mr. Ortega linked the bar code with Visual Manufacturing and the punch clock. (See Ortega's deposition, Exhibit 3, Pg. 41, Ln. 1-22).

12. During his employment, Mr. Ortega also implemented the punch clock system through the program Visual Manufacturing. (See Ortega's deposition, Exhibit 3, Pg. 41, Ln. 1-9). The punch system was his entire responsibility, from the installation of the clock to all issues and problems with the clock. (See Ortega's deposition, Exhibit 3, Pg. 42, Ln. 9-19). When there was a software problem with the time clock system, Mr. Ortega would troubleshoot the problem, and would

make the independent decision to work around the Defendant's factory workers' schedules to troubleshoot the time clocks and/or software changing for daylight savings time. (See Ortega's deposition, Exhibit 3, Pg. 42, Ln. 9-Pg. 43, Ln. 23; See 30b6 deposition, Pg. 14, Ln. 23-25).

13. Mr. Ortega also handled any virus problem, as he would analyze, diagnose and resolve any virus issues. (See Ortega's deposition, Exhibit 3, Pg. 46, Ln. 8-14).

14. Mr. Ortega was not always told "what to do" as far as duties during his employment, but he would "do everything." (See Ortega's deposition, Exhibit 3, Pg. 126, Ln. 10-15).

### III.  Transition from Array to Bel Fuse

15. Array Connector Corporation was purchased by Bel Fuse on or about August of 2013. (See Ortega's deposition, Exhibit 3, Pg. 48, Ln. 5-13; See 30b6 deposition, Pg. 29, Ln. 1-11).

### II. Employment with Bel Fuse

16. After August of 2013, as an employee of Bel Fuse, Mr. Ortega's position and duties did not change. (See Ortega's deposition, Exhibit 3, Pg. 49, Ln. 23-25; See 30b6 deposition, Pg. 33, Ln. 3-9).

17. As IT Manager, Mr. Ortega would, "check the status of database on the server to ensure back-up, the file server, the status of security cameras, check network and wireless internet function, respond to database information requests from various departments, respond to help desk requests from employees to perform trouble-shooting services on their personal computers and printers, request keys for new employees, maintain database of employees with keys for certain

access, maintain and change electronic keypad access to facilities, troubleshoot on instruments and quality control." (See Interrogatory responses, Exhibit 4, No. 9; See 30b6 deposition, Pg. 14, Ln. 2-9).

18. During his employment, Mr. Ortega set up a "test database," and made the decision that the company would have two, different, extra databases as a fail safe measure because he had concerns about new employees damaging the production database. (See Ortega's deposition, Exhibit 3, Pg. 21, Ln. 22, Pg. 23, Ln. 6). Mr. Ortega saw the maintenance of the databases as part of his responsibilities. (See Ortega's deposition, Exhibit 3, Pg. 21, Ln. 22, Pg. 23, Ln. 6).

19. During his employment, Mr. Ortega, "was in charge of everything with the network, including control of Bel Fuse's database, email, email server, camera, security cameras, help desk, alarm system, and "everything to do with electricity." (See Ortega's deposition, Exhibit 3, Pg. 7, Ln. 20 – Pg. 8, Ln. 4; See 30b6 deposition, Pg. 40, Ln. 10-17).

20. During his employment, Mr. Ortega would "control the database, backups, administrate the software in charge of production which was Visual Manufacturing, acted as administrator of email server which was Windows Exchange Server, administrator of the file server, handled all backups of all servers, and was software administrator of all software." (See Ortega's deposition, Exhibit 3, Pg. 8, Ln. 19-25). He was also in charge to make sure backups were done correctly, making the decision about how to best handle the

20. backup, as well as handling the permissions for employees to have IDs for the software. (See Ortega's deposition, Exhibit 3, Pg. 9, Ln. 5-14; Pg. 21, Ln. 3-21).

21. During his employment, Mr. Ortega would diagnose, troubleshoot, and solve problems when instruments would break down, including the handling of network problems, hardware problems, and computer problems. (See Ortega's deposition, Exhibit 3, Pg. 20, Ln. 9-13;  Pg. 46, Ln. 1-2).

22. During his employment, Mr. Ortega was able to decide how to test the system and the network to make sure it was running properly, and nobody had to instruct him on how to do this process – he knew from the training he had on the job. (See Ortega's deposition, Exhibit 3, Pg. 57, Ln. 12-19; See 30b6 deposition, Pg. 14, Ln. 2-9).

23. Mr. Ortega was employed with Bel Fuse until March 18, 2014, when he resigned. (See Ortega's deposition, Exhibit 3, Pg. 5, Ln. 12 - 17; Pg. 7, Ln. 10 – 11; Pg. 49, Ln. 23-25; Pg. 72, Ln. 13 – 17; Pg. 101, Ln. 1-23; See also true and correct copy of Ortega's Resignation Letter, attached hereto as Exhibit 6).

**Mr. Ortega Was Paid a Salary at Array Connector and Bel Fuse**

24. Mr. Ortega was not paid per hour while working with Bel Fuse, and does not have any documents to negate that he was paid a salary. (See Ortega's deposition, Exhibit 3, Pg. 70, Ln. 11-14; Pg. 114, Ln. 3-7; See 30b6 deposition, Pg. 27, Ln. 24-Pg. 28, Ln. 4). Instead, he was paid a salary, where some weeks he worked thirty hours, some weeks he worked sixty hours, but he always got paid the same amount. (See Ortega's deposition, Exhibit 3, Pg. 70, Ln. 11- Pg. 71, Ln. 6).

25. During Mr. Ortega's employment, when he was paid a salary, he was paid bi-weekly. (See Ortega's deposition, Exhibit 3, Pg. 122, Ln. 8-16).

26. During his employment, Mr. Ortega was compensated with a salary of $49,288.00 in 2011. (See Ortega's deposition, Exhibit 3, Pg. 70, Ln. 1; See also true and correct copy of Mr. Ortega's W2 from 2011, attached hereto as Exhibit 7).

27. During his employment, Mr. Ortega was paid an annual income of $44,422.00 in 2012 while working for Array Connector. (Exhibit 7).

28. During his employment, in 2013, Mr. Ortega was paid an annual income of $54,999.88 while working for Array Connector. (See Ortega's deposition, Exhibit 3, Pg. 69, Ln. 18-22).

29. During his employment in 2014, Mr. Ortega received a total of $15,396.00 in wages. (See Ortega's deposition, Exhibit 3, Pg. 70, Ln. 3-6; See Exhibit 7).

30. Although Mr. Ortega may have worked different amounts of hours per week, he was always paid the same amount per week. (See Ortega's deposition, Exhibit 3, Pg. 71, Ln. 3-6).

31. During his employment, when Mr. Ortega received a raise, it was as an increase in his annual salary. (See Ortega's deposition, Exhibit 3, Pg. 113, Ln. 24 - Pg. 114 Ln.2).

**Ortega's Hours While Employed**

32. Throughout employment with Bel Fuse, Mr. Ortega had a work schedule which was 7:00 a.m. until approximately 3:30 p.m. or 4 p.m., which amounted to nine hours per day, five times per week, Monday through Friday (See Ortega's

deposition, Exhibit 3, Pg. 82, Ln. 10-12; Pg. 83, Ln. 10-19);(See 30b6 deposition, Pg. 34, Ln. 8-9).

33. Defendant's Handbook required that "all overtime must receive the supervisor's prior authorization." (See true and correct copy of company handbook, attached hereto as Exhibit 8). Mr. Ortega received the handbook, and signed receiving the handbook. (See true and correct copy of Ortega's signature for handbook, attached hereto as Exhibit 9).

34. Mr. Ortega never asked permission from his supervisor to work additional hours, at night.  (See Ortega's deposition, Exhibit 3, Pg. 104, Ln. 12-13).

35. Mr. Ortega never complained about not being paid properly during his employment, despite the Defendant having a complaint procedure, which he was aware existed. (See Ortega's deposition, Exhibit 3, Pg. 106-107, Lns. 6-4; Pg. 113, Ln. 7-9).

36. Mr. Ortega's hours and pay during employment are reflected in a pay history, which are based on records maintained by the Defendants. (See true and correct copy of Pay History, attached hereto as Exhibit 10). Mr. Ortega did not maintain record or track his hours during his employment. (See Ortega's deposition, Exhibit 3 , Pg. 72, Ln. 25 – Pg. 73, Ln. 2; Pg. 87, Ln. 7-8). Mr. Ortega is not certain of the hours he worked per week. (See Ortega's deposition, Exhibit 3, Pg. 73, Ln. 24 – Pg. 74, Ln. 5).

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic filing on November 17, 2015 on all counsel or parties of record on the Service List below.

        s/Lindsey Wagner
        Cathleen Scott, Esq.
        Florida Bar No. 135331
        Primary e-mail: CScott@scottwagnerlaw.com
        Secondary e-mail: mail@scottwagnerlaw.com
        Lindsey Wagner, Esq.
        Florida Bar No. 86831
        Primary e-mail: LWagner@scottwagnerlaw.com
        Secondary e-mail: mail@scottwagnerlaw.com
        Stephanie Cagnet Myron, Esq.
        Primary e-mail: SMyron@scottwagnerlaw.com
        Secondary e-mail: mail@scottwagnerlaw.com
        Florida Bar No. 88973
        SCOTT WAGNER & ASSOCIATES, P.A.
        Jupiter Gardens
        250 South Central Boulevard
        Suite 104-A
        Jupiter, FL 33458
        Telephone:   (561) 653-0008
        Facsimile:    (561) 653-0020
        Secondary Address: 101 Northpoint Parkway
        West Palm Beach, FL 33407
        www.ScottWagnerLaw.com

## SERVICE LIST
## CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN

J.H. Zidell, Esq.
Florida Bar Number: 10121
J.H. Zidell, P.A.
Attorneys for Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: jgarrett.jhzidellpa@gmail.com
*Attorneys for Plaintiff*

Cheryl L. Wilke, Esq.
Florida Bar No. 893780
cwilke@hinshawlaw.com
Mary Beth Ricke, Esq.
Florida Bar No. 107213
mricke@hinshawlaw.com

Daniel A. Krawiec, Esq.
Florida Bar No. 59136
dkrawiec@hinshawlaw.com
*Attorneys for Array Connector Corporation &
Bill McPherson*