UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN

RAMON ORTEGA, *and all others similarly situated under 29 U.S.C. § 216(b)*,

        Plaintiff,

vs.

BEL FUSE, INC., ARRAY CONNECTOR CORPORATION, BILL MCPHERSON,

        Defendants.

_____

## PLAINTIFF'S OPPOSITION TO DEFENDANT BEL FUSE, INC.'s MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff, by and through his undersigned counsel, hereby opposes the Motion for Summary Judgment filed on November 17, 2015 [DE 60] and states as follows.

### I. RESPONSE TO STATEMENT OF FACTS

While Defendant Bel Fuse, Inc. has drafted its statement of facts in a very one-sided way, at their core, all of these facts are true. All facts alleged in Defendant's Statement of Undisputed Facts are admitted for the purposes of summary judgment with the exception of Statement of Fact # 18, which is not supported by the citation or the record.

At Statement of Fact 18, Defendants assert that Ortega's deposition reveals that he once made the decision to implement two databases, apparently to show that there was some professional or management discretion in implementing these databases. The cited portion and the record do not reflect this assessment that it was Plaintiff employee Ortega's decision.

## II.   SUPPLEMENTAL FACTS ALLEGED

a. Plaintiff was responsible for the information technology needs of Defendant Bel Fuse, Inc. Deposition of Corporate Representative of Bel Fuse, Inc. (Bel Fuse Depo) attached as Exhibit "A", p. 13

b. Plaintiff's duties were to maintain the network, install hardware and software, test software, and develop reports. Bel Fuse Depo at p. 14; Deposition of Ramon Ortega [DE 62-3] ("Ortega Depo") at p. 8; *see* Interrogatory Responses of Ramon Ortega at 7 [DE 62-4].. The software at issue included Excel and Microsoft Word. Bel Fuse Depo at p. 18.

c. Plaintiff would replace computer components. Bel Fuse Depo at p. 14.

d. Plaintiff's main task was to make sure the server was operating. Bel Fuse Depo at p. 15.

e. Plaintiff was the person that people would go to if there was ever a problem with their computer. Bel Fuse Depo at p. 20.

f. When Bel Fuse Inc. refers to "programming", they mean inputting data into an Excel spreadsheet. Bel Fuse Depo at pp. 24-25.

g. The only aspects of Plaintiff's job that involved engineering was about five percent of his job. Ortega Depo at p. 126.

## III.   MEMORANDUM OF POINTS AND AUTHORITIES

a. **Introduction**

Defendant Bel Fuse, Inc's brief is phenomenally drafted, and is careful to introduce well cited facts which are generally not disputable. This Opposition urges the Court to carefully review the undisputed facts and compare them to what the FLSA, the Department of Labor's interpretation, and the courts actually say about these exemptions. Defendant's Motion for Summary Judgment is fatally flawed because it misapplies the law to the factual circumstance.

Under a proper application of the professional exemption and the computer programmer's exemption, Defendant's facts instead paint a picture of a nonexempt employee. Plaintiff Ortega was learned, his job was highly skilled, and it involved computers; however, that does not mean that he was exempt from the FLSA under the professional or computer worker exemption.

> b. **Argument** – Defendant Bel Fuse, Inc. has Not Sufficiently Shown Facts and Law to Support the Application of an Exemption to the FLSA

As explained in greater detail below, Defendant does not fulfill their burden of establishing an exemption, because the facts that it asserts do not fulfill the requirements of the professional or computer exemptions. As an exemption to the FLSA, the professional and computer exemptions are to be narrowly construed. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). "[T]he employer, bears the burden of proving the applicability of a FLSA exception by 'clear and affirmative evidence.'" Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1254 (11th Cir. 2001).

> Defendant employer must show that the Plaintiff employee's primary duty is exempt.

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700. The primary duty is not defined by what an employee is titled or designated, but what he actually does.

> A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.

29 C.F.R. § 541.2.

### b(1).  Computer Exemption

The computer worker/programmer exemption is not just for employees who work with computers. It is intended for those who are literally designing and programming software programs and systems. This exemption does not cover information technology employees, *i.e.,* those that repair computers, install programs, and maintain networks. This distinction between "I.T." employee and programmer is absolutely critical, and is glossed over by Defendants.

The computer worker/programmer exemption arises from 29 U.S.C. §213(17):

> **(17)** any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is--
>
> **(A)** the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> **(B)** the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> **(C)** the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> **(D)** a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, […]

29 U.S.C. § 213; *see* 29 C.F.R.§ 541.400. "The exemption for employees in computer occupations does not include employees engaged in the manufacture or repair of computer hardware and related equipment." 29 C.F.R. § 541.401.

The Department of Labor opines that this exemption does not apply unless a employee's job is to "design, create or modify the systems or programs" Opinion Letter Fair Labor Standards Act (FLSA), 2001 WL 1558967, at *2.

Cases interpreting § 213 and § 541.400 find that only certain activities are covered by these exemptions– not all persons working with computers are subject to these exemptions. *E.g.* Bagwell v. Fla. Broadband, LLC, 385 F.Supp.2d 1316 (S.D.Fla.2005); Bergquist v. Fidelity Info. Servs., Inc., 399 F.Supp.2d 1320 (M.D.Fla.2005) aff'd, 197 F. App'x 813 (11th Cir. 2006); Pellerin v. Xspedius Mgmt. Co. of Shreveport LLC, 432 F.Supp.2d 657 (W.D.La.2006); Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 62 (D.D.C. 2006); Bobadilla v. MDRC, No. 03–cv–9217, 2005 WL 2044938 (S.D.N.Y. Aug.24, 2005).

The controlling factor is what the employee actually did and if that fits with the particular verbiage of the exemption. "The mere fact that some of the tasks [the employee] performed can be described as 'consulting,' 'analysis,' or 'testing' relating to computers does not mean that [employee] falls within the ambit of a provision that is designed to exempt computer programmers, network designers, and software developers." Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 52 (D.D.C. 2006).

Once Defendant's jargon is stripped of its colorful adjectives, the heart of Defendant's facts reveal that Plaintiff employee was an I.T. person, responsible for the maintenance of the computers and the networks. Bel Fuse, Inc. in its deposition was naturally asked many questions about Plaintiff employee's job duties. *See* the Deposition of Corporate Representative of Bel Fuse, Inc., Attached as Exhibit "A" ("Bel Fuse Dep.") pp 13-25. Bel Fuse, Inc. described him as an "I.T." guy throughout – never once describing a task that he did which would qualify Plaintiff employee as exempt.

The only reference at all to anything that would be covered under the exemption would be a comment that once Plaintiff-employee "developed a program, and I access from my desktop and put what I want with different parameters and summary comes out instead of me going individually to do something." Bel Fuse Dep, p.21, l.16-20. This, however, turned out to be just

an excel spreadsheet and not actual programming. Id. at 22-24. When clarified, the representative of Bel Fuse explained that its definition of programming was manually converting data into an excel file. Id. at 24-25.

This matter is similar to Martin v. Indiana Michigan Power Co., a Sixth Circuit Court of Appeals case. 381 F.3d 574, 577 (6th Cir. 2004). The employee in that matter managed the Local Area Network, installed software, and repaired computers, just like Plaintiff-employee in a remarkably similar fact pattern.[1] The Sixth Circuit reversed the trial court's finding that this activity was exempt under the computer exemption, noting that the district court had made the same mistake that the Defendants in this matter make, particularly:

> The district court made an understandable mistake, one that arises from the common perception that all jobs involving computers are necessarily highly complex and require exceptional expertise. However, the regulations provide that an employee's primary duty must require "theoretical and practical application of highly-specialized knowledge *in computer systems analysis, programming, and software engineering*" not merely "highly-specialized knowledge *of computers and software.*" This is an important difference. The former is a narrower class of jobs that requires a different level of knowledge and training than the latter [emphasis in original].

Martin v. Indiana Michigan Power Co., 381 F.3d 574, 580 (6th Cir. 2004).

---

[1] "When people at the plant have problems with their computers, they call the help desk where the help desk employees put the problems into a database as "help desk tickets," which Martin prints out. Martin responds to these help desk tickets. He goes to the location indicated where he attempts to determine the nature of the problem, to "troubleshoot" it to determine how to proceed, and to repair the problem if possible. Martin installs software, such as Microsoft's Office 97, on individual workstations. He troubleshoots Windows 95 problems and installs provided software patches.

If Martin cannot fix a problem, he will report the problem and how he tried to fix it to Thornburg. Thornburg will decide whether to request service from the manufacturer or order a replacement part or unit. Martin, however, does not decide or make recommendations as to whether a piece of equipment must be serviced or replaced. Nor has he written reports on his troubleshooting or repair activities. He has not recommended the purchase of any equipment, hardware, or software, although Thornburg considers Martin's comments on printers and problems 'valuable' in his own decision making process." Martin v. Indiana Michigan Power Co., 381 F.3d 574, 577 (6th Cir. 2004).

There are only a handful of incidents which are arguably covered by the computer exemption. The record presented by the Defendant shows that these incidents are few and far between, and come nowhere near to be the "primary" duty of Plaintiff employee.

**b(ii) - Professional Exemption**

The professional exemption arises out of 29 U.S.C. § 213 (a)(1), but the legislature does not give much guidance. The Department of Labor has interpreted it to mean:

> work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

29 C.F.R. § 541.301. The tasks subject to the professional exemption are not those that are merely difficult or require an intelligent person to do them. Instead, the professional exemption is intended to capture a certain flavor of profession that demands a particular education. The administrative rules provide:

> (c) The phrase "field of science or learning" includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning.

29 C.F.R. § 541.301. A person covered by the professional exemption must actually be doing what they went to school for. "29 U.S.C. § 213(a)(1) requires that in order to be an exempt professional, an employee must be 'employed in a bona fide ... professional capacity.' Thus, the determinative factor is the job requirement and not the education in fact acquired by the employee." Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1565 (11th Cir. 1991).

If the job itself does not demand a particular college degree or specific advanced knowledge, it is probably not covered by the professional exemption. Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1566 (11th Cir. 1991).

Plaintiff employee has a degrees in electrical engineering [DE 62-2], but there is no indication this is what he did with Bel Fuse, Inc.  The only evidence presented to this Court that Plaintiff employee does electrical engineering is some testimony in his own deposition that he tried to provide advice in this area when he can, but this was by far not his primary job duty.  Furthermore, the job description provided by Defendant does not even contain any professional or particular degree requirement: "AA Degree or equivalent technical training and/or experience".  *See* Array Connector Corporation Job Description [DE 62-5].

  c. **Conclusion**

Defendant Bel Fuse, Inc. has not shown facts which create a *prima facie* argument for Summary Judgment under the relevant law.  Plaintiff employee was an information technology employee not exempt under the professional or computer exemptions.  No tasks alleged would be covered by the exemptions.  The only tasks which would arguably be covered as exempt were few and far between, but, to the extent that said tasks were covered, it is absolutely a question of fact as to how much of Plaintiff employee's time was devoted to said tasks.  Therefore, this Court should DENY Defendant's Motion for Summary Judgment.

                Respectfully Submitted,

                J.H. Zidell, P.A.
                *Attorneys for Plaintiff*
                300 71st Street, Suite 605
                Miami Beach, Florida 33141
                Tel: (305) 865-6766
                Fax: (305) 865-7167

                By:__/s/ Elizabeth O. Hueber
                Elizabeth Olivia Hueber
                Florida Bar No.: 0073061

**CERTIFICATE OF SERVICE:**

I hereby certify that a true and correct copy of the foregoing was sent via CM/ECF to all counsel or parties of record in the Service List below on December 4, 2015.

>J.H. Zidell, P.A.
>*Attorneys for Plaintiff*
>300 71st Street, Suite 605
>Miami Beach, Florida 33141
>Tel: (305) 865-6766
>Fax: (305) 865-7167
>
>By:  /s/ Elizabeth O. Hueber
>Elizabeth Olivia Hueber
>Florida Bar No.: 0073061

**SERVICE LIST**

| | |
|---|---|
| Lindsey Brooke Wagner, Esq.<br>Cathleen Scott & Associates, P.A.<br>250 S. Central Blvd<br>Suite 104<br>Jupiter, FL 33401<br>(561)653-0008<br>Email: lwagner@csapalaw.com<br>*Attorney for Defendants:*<br>*Bel Fuse, Inc.*<br>*Array Connector Corporation* | Cheryl Lorraine Wilke<br>Email: cwilke@hinshawlaw.com<br>Mary Beth Ricke<br>Email: mricke@hinshawlaw.com<br>Daniel Albert Krawiec, II<br>Email: dkrawiec@hinshawlaw.com<br>Hinshaw & Culbertson LLP<br>One East Broward Blvd.<br>Suite 1010<br>Fort Lauderdale, FL 33301<br>954-467-7900<br>Fax: 954-467-1024<br>*Attorneys for Defendants:*<br>*Array Connector Corporation*<br>*Bill McPherson* |