UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN

RAMON ORTEGA, and all others similarly
situated under 29 U.S.C. § 216(b),

    Plaintiff,

v.

BEL FUSE, INC.,
ARRAY CONNECTOR CORPORATION, and
BILL MCPHERSON,

    Defendants.
_____/

### DEFENDANT BEL FUSE, INC.S' REPLY TO ADDITIONAL STATEMENT OF UNDISPUTED MATERIAL FACTS

COMES NOW, the Defendant, BEL FUSE, INC., by and through the undersigned attorney, hereby files this Reply to Plaintiff's Additional Statement of Undisputed Material Facts and in support of Defendant's Motion for Summary Judgment in their favor against Ramon Ortega.

To the extent this Honorable Court allows Plaintiff's filing of Supplemental Facts contained within the Opposition, rather than a separate filing, which is contrary to L.R. 56.1(a), Defendant files this Reply. Specifically, and within the Opposition to the Motion for Summary Judgment, Plaintiff filed supplemental facts. While recognizing requirements of L.R. 56.1(a), which require adoption of the original numbering scheme, but to avoid confusion with this Honorable Court, Defendant utilizes the alphabetical system for the supplemental facts presented by Plaintiff.

### REPLY

Initially, Defendant notes that Plaintiff did not dispute Defendant's Statement of Material Fact, aside from Paragraph 18, which it simply contends is not supported by the record, but fails to controvert the facts by the opposing party's statement. Yet, it is apparent that the statements in Paragraph 18 are supported by the record. Specifically, Defendant's asserted in Paragraph 18 as follows:

> 18. During his employment, Mr. Ortega set up a "test database," and made the decision that the company would have two, different, extra databases as a fail safe measure because he had concerns about new employees damaging the production database. (See Ortega's deposition, Exhibit 3, Pg. 21, Ln. 22, Pg. 23, Ln. 6). Mr. Ortega saw the maintenance of the databases as part of his responsibilities. (See Ortega's deposition, Exhibit 3, Pg. 21, Ln. 22, Pg. 23, Ln. 6).

This is supported by the record. Specifically, Plaintiff testified as follows:

> Q. But the test database, you set up?
> A. I set it up.
> Q. And you set it up to do what?
> A. To be – we have two database, test database and test A database. The test database was actualize every night. And the other one just in case.
> Q. And was that your decision?
> A. My decision
> Q. Your decision to have two different databases?
> A. Yes. Two different extra databases.
> Q. And that was your decision to have that as a fail safe measure?
> A. Right, because new employees, they are coming maybe monthly. So the new employees, sometime they didn't know how the system works. So if you want to work, work with the test database because I am not going to let anyone damage the production database.
> Q. Because that was part of your responsibilities to maintenance that?
> A. Of course. And it never fails, by the way.

Exhibit 3, Pg. 22, Ln. 8- Pg. 23, Ln. 6

As such, it is apparent that these facts are supported by the record.

## PLAINTIFF'S SUPPLEMENTAL FACTS

Defendant responds to Plaintiff's Supplemental Facts as follows:

a. Undisputed.

b. Undisputed, but also it is undisputed by both parties that Plaintiff had additional duties which are outlined in Defendant's Statement of Material Facts and also undisputed by Plaintiff.

c. Undisputed, but also undisputed that this was one of Plaintiff's many responsibilities outlined in on page 14 within the citation provided by Plaintiff. Specifically, the testimony states that Plaintiff also "supported the server to make sure that it was always up for the network, it was always 24 hours running…he was tasked to fix problems, install hardware and software. Test software for improvement. As well as develop problems for users…make sure all that the system was running all the time." Exhibit 65-1, Pg. 14, Ln. 3-23.

d. Disputed only to the extent the factual statement is not fully reflected by the record citation. Specifically, at page 15, the testimony states:

> Q. …What type of internal network system are we talking about?
> A. The operating system
> Q. Was there a central service distributing to client computers?
> A. Yes. To the people in Cinch Connectivity Miami.
> A. So my question then is would Mr. Ortega repair both the server side of things as well as the client side of things?
> A. I would say yes, that was probably his main task to make sure that that system was operating.
> Q. So that would be everything associated with that?
> A. With the server, everything associated with the network system.
> ...

Exhibit 65-1, Pg. 15, Ln. 8-24.

Additionally, the corporate representative also testified in the same deposition that the tasks and responsibilities outlined in Ortega's job description describe Ortega's "main duties and responsibilities" at Defendant's employment, and that "basically, that was his

function, support the network and provide programs or reports for the user." Exhibit 11, Pg. 31, Ln. 12-Pg. 32, Ln. 14; DE 62-5; Pg. 25, Ln. 7-11. The corporate representative testified that, with the company, "he was the network administrator…he supported and was tasked to run all the IT needs and IT requirements. And he was as well in his job description, engineer. Network administrator/engineer." Exhibit 11, Pg. 13, Ln. 11-21.

e. Undisputed, but does not provide full testimony per the citation. Specifically, the corporate representative in this citation testified that if purchasing agents ever had problems with their software or computer, they would go to the Plaintiff. D.E. 65-1, Pg. 20, Ln. 17-25.

f. Disputed only to the extent that the citation is not fully accurate or in context. The corporate representative deposition involved two (2) different corporate representatives – Carlos Fanabria and Leticia Baro. See D.E. 65-1. During Mr. Fanabria's testimony as a corporate representative, he testified as follows:

> Q. When you say programming, you are referring to being able to reformat the data to your parameters?
> A. Correct.
> Q. It's not actually like C Plus Plus, or something with the source code?
> A. I would not know what he would use to do that. That is not my background.
> Q. I think programming can mean a lot of things to different people. I am trying to understand what you mean when you say that. Were there any other tasks that you would quality as programming that Mr. Ortega was doing?
> A. That is what I call programming.
> Q. Taking the data from Visual and moving it into a different data file that you would use, that is the extent of what you meant when you said he did programming?
> A. Correct.
>
> Exhibit 65-1, Pg. 24, Ln. 13-Pg., 25, Ln. 6

g. Disputed to the extent this is a misstatement of the record. The record citation speaks for itself. Plaintiff testified as follows:

> Q. Did your use your education as an engineer to do your job at Array?
> A. No. Well, possible. Five percent, ten percent, when they ask me something about electricity. I use my knowledge of electricity that I got in the university. But five percent, ten percent.
> Q. Was it part of your job to answer questions about electricity?
> A. Nobody told me at Array Connector my duties. They give me the duties, but they never tell me what to do and I was doing everything.
> …

Exhibit 3, Pg. 126, Ln. 1-12. Additionally, Plaintiff testified that even though his Bachelor's degree is in something different, he still has 13 years of work experience that helped him learn his industry. Exhibit 3, Pg. 128, Ln. 22-Pg. 131, Ln. 19.  Specifically, in addition to the Bachelor's degree he holds as an electrical engineer and his post graduate work as a programmer, he also has 13 years of work experience relating to network administration. Exhibit 3, Pg. 128, Ln. 22-Pg. 131,  Ln. 19.  He learned how to do his job based on the number of years he worked with the Defendant. Exhibit 3, Pg. 128, Ln. 22-Pg. 131, Ln. 19.

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by electronic filing on December 14, 2015 on all counsel or parties of record on the Service List below.

s/Lindsey Wagner
Cathleen Scott, Esq.
Florida Bar No. 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Lindsey Wagner, Esq.
Florida Bar No. 86831
Primary e-mail: LWagner@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
Stephanie Cagnet Myron, Esq.
Primary e-mail: SMyron@scottwagnerlaw.com
Scott Wagner & Associates, P.A.

        Secondary e-mail: mail@scottwagnerlaw.com
        Florida Bar No. 88973
        SCOTT WAGNER & ASSOCIATES, P.A.
        Jupiter Gardens
        250 South Central Boulevard
        Suite 104-A
        Jupiter, FL 33458
        Telephone:   (561) 653-0008
        Facsimile:    (561) 653-0020
        Secondary Address:  101 Northpoint Parkway
        West Palm Beach, FL 33407
        www.ScottWagnerLaw.com

## SERVICE LIST
### CASE NO.: 15-21229-CIV-ALTONAGA/O'SULLIVAN

Elizabeth Hueber, Esq.
Florida Bar No. 0073061
J.H. Zidell, P.A.
Attorneys for Plaintiff
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
Email: elizabeth.hueber.esq@gmail.com
*Attorneys for Plaintiff*

Cheryl L. Wilke, Esq.
Florida Bar No. 893780
cwilke@hinshawlaw.com
Daniel A. Krawiec, Esq.
Florida Bar No. 59136
dkrawiec@hinshawlaw.com
Hinshaw & Culbertson LLP
One East Broward Blvd.
Suite 1010
Fort Lauderdale, FL 33301
954-467-7900
Fax: 954-467-1024
*Attorneys for Array Connector Corporation &
Bill McPherson*