UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21229-CIV-ALTONAGA/O'Sullivan

**RAMON ORTEGA**,

    Plaintiff,
v.

**BEL FUSE, INC.**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendants, Array Connector Corporation, Bill McPherson, and Bel Fuse, Inc.'s (collectively, "Defendants[']") Joint Defense Motion for Judgment on the Pleadings . . . ("Motion") [ECF No. 74], filed on January 15, 2016. Plaintiff, Ramon Ortega ("Ortega") filed an Opposition . . . ("Response") [ECF No. 83] on February 1, 2016; Defendants filed a Reply . . . ("Reply") [ECF No. 84] on February 4, 2016. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

### I.  BACKGROUND

Ortega worked for Defendants, Array Connector Corporation ("Array") and Bill McPherson ("McPherson"), as a computer alarm and information technology maintenance man from approximately November 30, 2000 until August 2013, when Array merged with Defendant, Bel Fuse, Inc. ("Bel Fuse"). (*See* Amended Complaint . . . ("Amended Complaint") [ECF No. 41] ¶ 13). Ortega continued to work for Array and Bel Fuse until March 18, 2014. (*See id.*). On March 30, 2015, Ortega filed a Complaint . . . ("Complaint") [ECF No. 1], which he amended on June 3, 2015, alleging Defendants violated the Fair Labor Standards Act, 29 U.S.C. sections

201–16 ("FLSA"), in failing to properly pay him overtime wages from November 30, 2000 through March 18, 2014.  (*See generally* Am. Compl.).

In the Motion, Defendants raise newly acquired information that Ortega filed a Chapter 7 bankruptcy petition on October 31, 2013; and bankruptcy proceedings lasted until August 14, 2015 — several months after Ortega filed his Complaint.  (*See* Mot. 2).  Defendants discovered this information on January 12, 2016, during preparation of pretrial materials.  (*See id.* n.2).  Thus, Defendants move to jointly dismiss the case and/or move for judgment on the pleadings, arguing Ortega: (1) failed to disclose his FLSA lawsuit to the bankruptcy court; (2) lacks standing, as a bankruptcy trustee succeeds to all causes of action held by the debtor; and (3) is judicially estopped from bringing this action.  (*See id.* 2, 7).  Ortega does not dispute the existence of his bankruptcy proceedings and even agrees with Defendants "all claims prior to October 31, 2013 [the "Pre-Petition Claims"] should be . . . dismissed."  (Resp. 1 (alterations added)).  However, Ortega also argues he was not properly paid overtime wages from November 1, 2013 until March 2014; and insists there is no legal basis for dismissing these claims that arose *after* he filed for bankruptcy ("Post-Petition Claims").  (*See id.* 2–3).

## II.   LEGAL STANDARD

When a debtor files a petition for bankruptcy, an estate consisting of the debtor's assets is created.  *See* 11 U.S.C. § 541.  Subject to several exceptions, this estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," *id.* § 541(a)(1), as well as "[a]ny interest in property that the estate acquires after the commencement of the case," *id.* § 541(a)(7) (alteration added).  Despite the fact this latter section, 541(a)(7), appears to mandate the inclusion of post-petition property in the bankruptcy estate, courts

distinguish between petitions filed under Chapter 7 and those filed under Chapters 11 and 13. *See Brassfield v. Jack McLendon Furniture, Inc.*, 953 F. Supp. 1424, 1432 (M.D. Ala. 1996).

"In an individual case filed under Chapter 7, two estates are created — the chapter 7 bankruptcy estate, and a new, post-petition estate." *Id.* The post-petition estate includes "property which the debtor receives, *after* filing and which is not governed by the exceptions in § 541(a)(5)." *In Re Griseuk*, 165 B.R. 956, 958 n.3 (Bankr. M.D. Fla. 1994) (emphasis added). Congress established this policy of separating pre-petition and post-petition assets to provide a fresh start for a debtor who has declared Chapter 7 bankruptcy. *See id.* Thus, unlike a case filed under Chapter 11 or 13, the Chapter 7 debtor retains possession of property — or legal claims — acquired after he files his bankruptcy petition. *See Brassfield*, 953 F. Supp. at 1432. Nevertheless, a legal claim arising after a Chapter 7 debtor files for bankruptcy may be included in the bankruptcy estate if the claim is "sufficiently rooted in the pre-bankruptcy past and . . . little entangled with the bankrupts' ability to make an unencumbered fresh start . . . ." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966) (alterations added); *see also In re Bracewell*, 454 F.3d 1234, 1255 (11th Cir. 2006).

A debtor who fails to disclose a legal claim that is the property of the bankruptcy estate may be equitably or judicially estopped from later asserting that claim. *See Brassfield*, 953 F. Supp. at 1432. Courts apply judicial estoppel to preserve the integrity of the judicial system, *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988); and bankruptcy courts rely on debtors' accurate disclosures of their assets to adjudicate just results. Thus, if a debtor, after receiving a discharge in bankruptcy, turns around and utilizes the judicial system to pursue claims he or she had previously misrepresented or failed to reveal throughout

3

the bankruptcy process, the debtor commits a fraud upon the courts and will be estopped. *See Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 571–72 (1st Cir. 1993).

### III. ANALYSIS

The Court agrees with the parties the Pre-Petition Claims should be dismissed, as the bankruptcy trustee from Ortega's Chapter 7 proceeding is the only party with standing to bring those claims. (*See* Mot. 4 (quoting *In re Engelbrecht*, 368 B.R. 898, 901 (Bankr. M.D. Fla. 2007) ("Once a trustee is appointed, he succeeds to all causes of action held by the debtor at the time the petition is filed." (internal quotation marks and citations omitted))); *see also* Resp. 1).[1] The remaining issues raised by the Motion are: (1) whether Ortega had a continuing duty to disclose his Post-Petition claims to the bankruptcy trustee, and if so, (2) whether he is judicially estopped from asserting these claims in the instant federal action. The Court addresses these issues below.

**A. Duty to Disclose Post-Petition Claims to the Bankruptcy Court**

Defendants argue Ortega had a duty to disclose any potential legal claims when he filed his bankruptcy petition, and to amend those disclosures if he became aware of new legal claims throughout the bankruptcy proceedings. (*See* Reply 3); *see also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) ("The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change.").[2]

---

[1] Ortega's only argument against dismissing the Pre-Petition Claims is Defendants filed the Motion "well past any applicable deadline." (Resp. 1). However, "standing is a component of subject matter jurisdiction . . . and as such may be raised at any time . . . ." *Coastal Conservation Ass'n v. Blank*, No. 2:09-CV-641-FTM-29, 2011 WL 4530544, at *2 (M.D. Fla. Sept. 29, 2011) (alterations added). Thus, the Court agrees dismissal of the Pre-Petition Claims, even at this late stage in the case, is warranted.

[2] *Burnes*, heavily relied upon by Defendants, is distinguishable from the instant case. *See generally* 291 F.3d 1282. The *Burnes* petitioner filed for bankruptcy under Chapter 13 and then converted the action to

Ortega responds, and Defendants acknowledge, legal claims arising after a plaintiff files for bankruptcy under Chapter 7, as opposed to Chapter 11 or 13, are not included in the bankruptcy estate. (*See* Resp. 4; Reply 6). Thus, Ortega asserts he was under no continuing duty to disclose his Post-Petition Claims or amend his disclosures to reflect the Post-Petition Claims. (*See* Resp. 4); *see also In re Witko*, 374 F.3d 1040, 1042 (11th Cir. 2004) ("Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not."). Defendants attempt to meld together the disclosure standards for Chapter 7 and Chapter 13 bankruptcies. (*See* Reply 7 (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010) ("[The continuing duty to disclose] applies to proceedings under Chapter 13 and Chapter 7 alike because any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies." (internal quotation marks and citation omitted; alteration added)))).

However, a closer look at the case law cited by Defendants indicates the Eleventh Circuit simply meant all bankruptcy debtors — regardless of whether they file under Chapter 7 or Chapter 13 — must continuously disclose assets *that form part of the bankruptcy estate*; the case law does not specifically require Chapter 7 debtors to disclose post-petition assets, which do not become part of the estate. *See Robinson*, 595 F.3d at 1274; *see also De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003). In other words, under Chapter 7, a debtor might have a continuing duty to disclose a pre-petition asset that he discovered post-petition (as pre-

---

a Chapter 7 proceeding after filing his federal lawsuit. *See id.* Thus, unlike here, the *Burnes* petitioner was under a clear obligation to disclose his federal lawsuit because: (1) Chapter 13 bankruptcy estates may include property acquired after the petition is filed, *see Brassfield*, 953 F. Supp. at 1432; and (2) the conversion of the bankruptcy proceeding from Chapter 13 to Chapter 7 provided another occasion when the lawsuit should have been disclosed, since the petitioner commenced the lawsuit prior to the conversion. In addition, *Snowden v. Fred's Stores of Tennessee, Inc.*, which Defendants likewise rely upon, is similarly distinguishable because it involved a Chapter 13 debtor. *See generally* 419 F. Supp. 2d 1367 (M.D. Ala. 2006).

5

petition assets form part of the bankruptcy estate), but would not have a duty to disclose a post-petition asset.

Regardless, Defendants argue Ortega still had a duty to disclose the Post-Petition Claims because they were "sufficiently rooted in [Ortega's] pre-bankruptcy past" so as to render them part of the bankruptcy estate. (Reply 6 (alteration added; internal quotation marks and citation omitted)). The most helpful case for Defendants on this point is *In re Alvarez*, 224 F.3d 1273 (11th Cir. 2000). In *In re Alvarez*, the petitioner ("Alvarez") filed a legal malpractice claim, alleging his lawyer negligently filed a Chapter 7 bankruptcy petition on his behalf. *See id.* at 1275. In response, the lawyer contended Alvarez's legal claims asserted in the malpractice case were property of the bankruptcy estate, even though the case was initiated after Alvarez filed his bankruptcy petition. *See id.* The Eleventh Circuit agreed, noting the legal malpractice case was firmly "rooted in the pre-bankruptcy past" as the lawyer's alleged negligence occurred prior to and concurrent with the filing of Alvarez's bankruptcy petition, and thus concluded the malpractice claims formed part of Alvarez's bankruptcy estate. *Id.* at 1279–80.

While the incidents giving rise to Alvarez's malpractice claim all occurred prior to or concurrently with the filing of Alvarez's bankruptcy petition, the incidents giving rise to Ortega's claims occurred partially before and partially after the filing of his petition. (*See generally* Am. Compl.). The incidents that occurred after Ortega filed his petition are not sufficiently "rooted in the pre-bankruptcy past" because, as Defendants have acknowledged, a discrete FLSA cause of action is created each time an employer issues a paycheck that fails to pay overtime compensation. *See Knight v. Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994) ("It is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered

6

and for which the overtime compensation is claimed." (internal quotation marks and citation omitted; alteration in original)); *see also Rivera v. Ndola Pharmacy Corp.,* 497 F. Supp. 2d 381, 396–97 (E.D.N.Y. 2007) ("Unlike other cases in which claims have been held to be rooted in the pre-bankruptcy past, plaintiff's allegations that she performed overtime work are maintainable without any reference to her pre-bankruptcy past. Although plaintiff will need to refer to some pre-petition events in order to prove her wages . . . these events are not for these purposes related to plaintiff's allegations that she was not compensated for overtime work." (alteration added)).

Ortega claims Defendants failed to properly pay him overtime wages from November 30, 2000 through March 18, 2014. (*See generally* Am. Compl.). Thus, every paycheck issued to Ortega after he filed for bankruptcy on October 31, 2013 created a distinct post-petition FLSA cause of action which cannot be included in Ortega's Chapter 7 bankruptcy estate. *See Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 791–95 (N.D. Ill. 2011) (finding an employee was judicially estopped from pursuing FLSA wage claims arising from paychecks received before, but not after, petitioning for bankruptcy because money the employee earned after petitioning for bankruptcy was not part of bankruptcy estate, and neither were claims arising from those paychecks); *see also Zaniewski v. PRRC Inc.*, No. 3:11-CV-01535 CSH, 2012 WL 1379671, at *2 (D. Conn. Apr. 20, 2012) ("Defendant's alleged failure to pay overtime compensation to [plaintiff] after April 23, 2010 creates a claim that is distinct from the claim arising from its alleged failure to pay such compensation before that date. There is no reason why the damages, if any, could not be divided so that the estate obtains damages covering the pre-petition period and [plaintiff] obtains damages covering the post-petition period." (alterations added)).

### B. Judicial Estoppel

Defendants argue Ortega is judicially estopped from pursuing the instant lawsuit because he never disclosed his FLSA claims to the bankruptcy court. (*See* Mot. 5–7 (citing *Muse v. Accord Human Res., Inc.*, 129 F. App'x 487, 488 (11th Cir. 2005) ("In the context of a bankruptcy case, judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the claims and had a motive to conceal them from the bankruptcy court."))). The Court need not address this issue because: (1) Ortega already conceded his Pre-Petition Claims should be dismissed; and (2) the Court has found Ortega was under no duty to disclose his Post-Petition Claims because they were not sufficiently rooted in his pre-bankruptcy past so as to constitute part of his bankruptcy estate. Because Ortega was under no duty to disclose his Post-Petition Claims to the bankruptcy court, he is not judicially estopped from raising them now. *See Muse*, 129 F. App'x at 488 (the plaintiff was not judicially estopped from pursuing his FLSA claim in federal court because the claims were not part of the bankruptcy estate, and thus, he had not duty to disclose them); *see also Zaniewski*, 2012 WL 1379671, at *2 ("[Plaintiff] was only required to list property that fell under the bankruptcy estate, not after-acquired property. . . . Thus, [plaintiff's] failure to list claims for overtime that had not yet come into existence does not constitute an inconsistent position that would justify judicial estoppel." (internal citation omitted; alterations added)).

### IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 74]** is **GRANTED in part** and **DENIED in part** as follows:

1. Ortega's FLSA claims arising prior to October 31, 2013 are **DISMISSED with prejudice**. Defendant, Bill McPherson is **DISMISSED** from the case, as McPherson was Ortega's employer only prior to October 31, 2013. (*See* Resp. 9 n.2).

2. Ortega's FLSA claims from November 1, 2013 to March 18, 2014 remain intact.

3. Given the limited amount of claims remaining in this case, the Court finds it warranted to amend the Order Setting Trial . . . ("Scheduling Order") [ECF No. 28] as follows:

   a. Calendar call, currently set for February 16, 2016, is **CANCELLED**.

   b. The parties are directed to contact Magistrate Judge John J. O'Sullivan to schedule a mutually agreeable time to mediate the remaining claims in this case.

   c. Mediation must be completed and a report received by **March 4, 2016**.

   d. If the parties are unable to resolve the remaining claims through mediation, the Court will re-set the matter for trial and provide instructions for re-briefing of the Motion for Summary Judgment [ECF No. 60], if appropriate, given the changed nature of the case.

4. Furthermore, given Plaintiff's concession he does not intend to introduce evidence of a failure by Defendants to pay him commissions owed on the sales of filters unless Defendants should "open the door to the issue by questioning Plaintiff-employee's motivations in filing the Complaint and seeking overtime" (Opp'n . . . [ECF No. 85]), Defendants' Motion In Limine . . . **[ECF No. 75] is GRANTED**. Should the parties be unable to settle and the case proceed to trial, and Plaintiff deem any questioning by Defendants to "open the door" to his motivations for filing suit, the Court will consider

additional arguments regarding the relevance and prejudicial effect, if any, of the objected-to evidence.

**DONE AND ORDERED** in Miami, Florida, this 10th day of February, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record