UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-21229-CIV-ALTONAGA/O'Sullivan

RAMON ORTEGA, et al., )
)
   Plaintiff, )
vs. )
)
BEL FUSE, INC., et al., )
)
   Defendants. )
_____ )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, through undersigned counsel, and requests the Court deny Defendants' Amended Motion for Summary Judgment [DE 98], and states as follows:

1. This matter sounds under the Fair Labor Standards Act ("FLSA") regarding unpaid overtime wages.

2. This Court should deny Defendants' Motion because the Plaintiff is not an exempt employee under the FLSA

**I: STANDARD ON SUMMARY JUDMENT**

"Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore, summary judgment is to be granted as a matter of law." *Hoffman v. Allied Corp., et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining if a genuine issue exists, the court must query whether "a reasonable jury could return a verdict for the

1

nonmoving party….*" Hoffman v. Allied Corp.*, *et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994) ("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006) (in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact….").

"On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Moreover, The trial courts function at the summary judgment phase is not "to weight the evidence and determine the truth of the matter but to determine whether there is no genuine use for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). Furthermore, "a dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party" Id, at 248; S*ee also, Barfield v. Brierton*, 882 F.2d 923, 933 (!1th Cir., 1989).

Furthermore, in FLSA cases "Although an FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies … militate against making that burden an impossible hurdle for the employee." Allen, 495 F.3d 1306, 1315 (2007), quoting Anderson, 328 U.S. 680, 687 (1946).

Credibility is not an issue for the court on summary judgment, only whether this is a factual dispute, based on evidence presented, not the weighing of that evidence. It is not a determination of the Court, but, rather, the trier of fact to determine if the inference of overtime work is

reasonable. See, *Solano v. A Navas Party Production, Inc.*, 728 F.Supp.2d 1334 (S.D. Fla. July 26, 2010), *Wallace v. The Kiwi Group Inc.*, 247 F.R.D. 679 (M.D. Fla. 2008), *Anderson v. Mt. Clemens Pottery Co*, 328 U.S. 680 (1946).

### II: DEFENDANT HAS THE BURDEN TO PROVE EXEMPTIONS ARE APPLICABLE IN THIS MATTER UNDER A CLEAR AND AFFIRMATIVE EVIDENCE STANDARD.

The employer carries the burden of proving an exemption, *Hogan v. Allstate Ins. Co.,* 361 F.3d 621, 625 (11th Cir. 2004), and in determining whether an exemption exists, the overtime provisions of Section 207 are narrowly construed against the employer. *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800, 804 (11th Cir. 1991); *see also Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir. 1994). The employer must prove the applicability of an exemption by clear and affirmative evidence. *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001). Consequently, the said burden is on Defendant and the clear and affirmative evidence standard applies to all of the below-referenced exemptions.

### III: EXEMPTIONS CLAIMED

The Defendant argues that the Plaintiff is an exempt employee under either 13(a)(1) or (17) of the act, as either a Learned Professional, or a Computer Professional. However, this is a false assumption.

The Defendants put a lot of emphasis on the job title assigned to plaintiff, but in the regulations specifically regarding the Computer Professional Exemption, the Federal regulations are clear "Because job titles vary widely and change quickly in the computer industry, job titles are not determinative of the applicability of this exemption." 29 C.F.R. § 541.400(a).

The Learned Professional Exemption requires a prolonged course of specialized intellectual instruction, not on the job training, which Defendants harp on as one of the key reasons

3

they claim the Plaintiff is exempt. *See*, 29 C.F.R. § 541.3(a). The main premise of this exemption is that the exempt employee acquired specialized knowledge through a prolonged course of specialized intellectual instruction, like a doctor going to medical school, or an archeologist getting a doctorate. *See*, Id. There is absolutely no allegation that the Plaintiffs 1981 degree in Cuba, which is claimed by Defendant to be the equivalent of a B.S. in Electrical Engineering, was a prolonged course of specialized intellectual instruction in computer use. This would be a ridiculous argument. First, because there were not computers, in the form we know them today, in 1981. Second, because an undergraduate degree in Electrical Engineering is different from a degree in computer programming or information technology. Third, because the Cuban educational system is not the same as the American Educational system, and the Defendants merely assert that the degrees are equivalent.

More importantly, the Plaintiff was not a Computer Professional, he was merely the most computer literate, in an environment without other computer literate persons. This means that he was not a computer professional, but merely one with someone with knowledge of computers and software, an essential distinction, as the Sixth Circuit holds;

> "The district court made an understandable mistake, one that arises from the common perception that all jobs involving computers are necessarily highly complex and require exceptional expertise. However, the regulations provide that an employee's primary duty must require "theoretical and practical application of highly-specialized knowledge *in computer systems analysis, programming, and software engineering*" not merely "highly-specialized knowledge *of computers and software.*" This is an important difference. The former is a narrower class of jobs that requires a different level of knowledge and training than the latter. Further, it is a distinction which will only become more relevant as the range of computer-related jobs continues to broaden."

*Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 580 (6ht Cir. 2004).

4

In the case at bar, the Defendant hopes that This Court will make the same mistake. Most of their statement of Material Facts is repetitive, and basically says, the Plaintiff had to make sure that the Wi-Fi worked, install programs like Microsoft Office on their computers, issue keys to their employees, check that the DVR attached to the security cameras was recording, store tape backups by "operating the lock box," backup hard drives, for which he used Windows Backup, (See, *Ortega dep*. 9:5-25 10:1-20), illegally pirate software upon the demand of the company, which SOMF ¶ 9 says was part of his job not to do, and find "workarounds for," meaning pirating the software on demand. *See,* (*Ortega dep.* 27:1-25, 28:1-25).

Perhaps no argument is needed past Defendant's Statement of Material Facts [D.E. 61], number 2, when it states Plaintiff learned how to do his job on Google. There may be no better argument that Plaintiff is not an exempt computer professional, nor an exempt learned professional, than that Plaintiff had to learn his job on Google as he was doing it. A professional can use Google, but not learn their job from Google. If you are being wheeled into the operating room, and you see your surgeon is Googling "how to practice medicine," you likely will not be going through with the open heart surgery.

The best example of the fact that the Plaintiff was not a learned professional, nor a computer professional, is the fact that he was in an office that was so computer illiterate that the person in charge of the company thought that cutting and pasting data into an Excel Spreadsheet was computer programming. (*Baro and Fanabria depo* at 24:5-25 & 25:1-6). Hence, every time that the Statement of Facts, or the Motion for Summary Judgment talks about computer programming, remember that it is talking about cutting and pasting data into an Excel Spreadsheet, not writing code, or anything requiring more than ten mouse clicks.

Implementing a barcode system, meant installing a program attachment that put barcodes on work orders, and managing a punch clock, meant managing a punch clock, in that the time needed to be updated for day light savings twice a year. With this in mind, it becomes clear that the Plaintiff was not at all a computer professional, or a learned professional, just the guy who was computer literate at the factory.

Hence, Plaintiff is not exempt, because he is not a learned professional.

### A: THE PLAINTIFF IS NOT EXEMPT UNDER THE LEARNED PROFESSIONAL EXEMPTION

As set forth above, the burden to prove an exemption is on the Defendant pursuant to a clear and affirmative evidence standard. *See,* Hogan and Klinedinst *supra.* "To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:" 29 C.F.R. § 541.301(a). Those (3) elements include: "(1) [t]he employee must perform work requiring advanced knowledge; (2) [t]he advanced knowledge must be in a field of science or learning; **and** (3) [t]he advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a)(1)-(3)(emphasis added).

SOMRF ¶5 quotes Plaintiffs job description, which preferred an AA degree, but did not require any degree at all. 29 C.F.R. § 541.301(b)(1), is clear "Advanced knowledge cannot be attained at the high school level." The knowledge that SOMF ¶5 states was necessary for the Plaintiffs job did not even require a high school degree, but, rather, "AA degree or equivalent technical training and/or experience." Hence, without question, Plaintiff fails to meet any of the

prongs required by C.F.R. §541.301(a), because Plaintiff has no specialized knowledge, and hence is not an exempt employee under the Learned Professional Exemption.

With respect to the learned professional exemption, "an employee is not an exempt professional unless his work requires knowledge that is customarily acquired after a prolonged course of specialized, intellectual instruction and study." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 206 (2d Cir. 2009). Consequently, a jury must determine whether Plaintiff's job, required advanced knowledge gleaned from a prolonged course of specialized, intellectual instruction and study, which SOMF ¶2 would have you believe includes "Googling."

If Google is a prolonged course of specialized, intellectual instruction and study, then last Fourth of July I was a learned pyrotechnics professional. However, I think the city's fire department, and my wife, would disagree with the level of expertise I claim from my "prolonged specialized intellectual course of Google study."

The Eleventh Circuit ruled in *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1565 (11th Cir. 1991) (emphasis added), "the determinative factor is <u>the job requirement</u> and not the education in fact acquired by the employee. The job Dybach occupied could have been satisfied, according to the trial testimony of the personnel director of the department-employer, by a B.A. degree in "nuclear physics, or be in corrections, or be in physical education, or basket weaving."

The job description of the position which Plaintiff filled, could have been filled by half the twentysomethings in America today. The facts in the instant case show that Plaintiff performed functions that rendered his position outside the Learned Professional Exemption. 90% of the tasks assigned to Plaintiff, undersigned counsel could do, and undersigned counsel is not a

7

twentysomething. The other 10% could be learned by "Googling" as Defendants themselves claim Plaintiff did.

Comprehensive knowledge of "multi-line phone systems," is something anyone working in a large office has, but Defendants claim is learned professional knowledge. *See,* SOMF¶5.

Additionally, the Defendants claim in SOMF ¶1, "His education includes courses in computer science, which covers the workings and operation of computer hardware and software." However, Defendants claim that the learned knowledge exception applies to training in Windows Visual Basic, in 1995. SOMF ¶1. Which would be a good argument in 1998, but today has little relevance.

The technical argument will be laid out, then explained in non-computer programmer terms.

Windows Visual Basic is an integrated developing environment, that synthesizes different programing languages, most of which did not exist before 2000. The modern application, since 2005 (when .NetFramework 2.0 was released), has only been truly relevant in programs using the .NET Framework. The .NetFramework was only useful after 2000, which is when Microsoft, Hewlett-Packard and Intel worked to standardize Common Language Infrastructure (CLE) and C#. Last decade, Microsoft replaced Visual Basic with Visual Studio, which is based in Windows Visual Basic, but open sourced cross platform software development at a different level. (This took Undersigned Counsel consulting a computer programmer to write, and understand).

Basically, what this means is that in 1995 there were a few different languages that computer programmers used to write programs for Windows. If one knew a programming language already, the programmer could synthesize their programming with programmers using other languages, to form Windows programs. So, basically, 1995 Windows Visual Basic was a

translation system for computer coding, that allowed two languages of code to be put in, and one type Windows could read to be output.

However, the use of Visual Basic in 1995 is as different from today's use, as the use of a cell phone in 1995, is to today's use. Meaning, that as technology evolved, the system became completely different, did new things, and served a different purpose. Imagine if someone in 1995 told you that you that soon you could take as many photos as you wanted without film. Your camera would be your cellphone, even teenagers will have these computer camera phones, and you could use the phone computer to send those unlimited pictures, or videos, to your spouse, or show the whole world, or make T-Shirts with. Not to mention that you could settle most arguments by pressing a button and asking a voice in your phone, named Siri, what the answer was.[1]

Similarly, the legal research skills of Justice Holmes were amazing for the day, however, despite his formal and specialized intellectual post-graduate training in research, a good law clerk could do it faster now with Lexis or Westlaw. Computer technology ages faster than the imagination. A new IPhone 3Gs (2010) is $20 dollars on E-Bay, and was about $600 in 2010.

Even more important, the Defendants constantly refer to network management as the Plaintiff's duty. Microsoft replaced Visual Basic with Visual Studio. In this decade, Visual Studio is used to enable easier development of programs relying on a virtual environment, not actual hardware, using what Microsoft calls the .NET Framework. Training in Visual Basic, in 1995, is wholly irrelevant to a world where the merging of languages is used to create a virtual computing

---

[1] Counsel is not an expert in computers, only knowledgeable. However, since the Defendants are not experts, offer no expert testimony, but rather pure conjecture of Defense Counsel to describe and characterize the Plaintiffs knowledge and training, the Plaintiff uses his knowledge of computers to answer. At a minimum the fact that Counsel who is knowledgeable about computers can easily disagree about the complexity and expertise required to do things like install Microsoft Word, there is doubtlessly an issue of material fact for a jury.

environment, known as Common Language Runtime (CLR). In 1995 no one knew that ten years later Computer programming for Windows would be designed to run on a virtual computer.

However, the demand to know Visual Basic was irrelevant because the Defendant would not pay for the licenses for it. *See,* (*Ortega depo.* 28:13-25). Hence, Plaintiff had no specialized training for the job.

Additionally, none of the Plaintiffs other formal training, which was all in Cuba before 1984, gave him the knowledge for his job in 2012. Working on IT Networks, was not what he was learning in 1981 at Camaguey University in Cuba studying electrical engineering. Hence, the analysis of the Eleventh Circuit, cited above, that the education of the Plaintiff is irrelevant, unless the job requirements necessitates the specialized knowledge of that education, is applicable here. With the requirements of the job being unrelated to his education, Plaintiff does not qualify for the learned professional exemption. *See,* Dybach, 942 F.2d 1562 (1991).

Plaintiff's training in 1972 in Lathe Operation (a power tool used to create symmetry in a manufactured item), Electronic Equipment Assembly in 1979, Electronic Tensometry (measuring tensile strength with an electronic gauge) in 1983, nor his Electrical Engineering degree in 1981, has any relevance to information technology management between 2012 to 2015.

In fact, Plaintiff states in his deposition that for his main duty, he had no specialized skill or training. *See, Ortega depo.,* 8:9-15. This undermines the two exemptions, the Learned Professional Exemption, and the Computer Professional Exemption that the Defendant claims. If you have no special skill or training, then you are not a learned professional. If you have no special skill or training in networking, then you are not a Computer Professional, in the way that the exemption contemplates.

"The phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession." 29 CFR §541.301(d). Thirty-year-old training in lathe operation, electronic measurement, or the alleged Cuban Educational System's equivalent of an undergraduate degree in electric engineering, is not academic training that is a prerequisite to thirty years later entering into fields not invented at the time of your degree.

Furthermore, the Defendant asserts that the Plaintiff was an IT manager, which he was not, which shall be addressed *infra*.

The Statement of Material facts reflects that the Defendant seems to think that the inclusion of computer terminology will make the Plaintiff look like a learned professional, however, that is not the case. SMF ¶ 5, if anything, proves Plaintiff was a non-exempt employee.

SOMF ¶7 when translated to plain English, means that the Plaintiff installed cable in the walls, and computers and phones on desks, and managed the maintenance crew. None of which requires a learned professional. If it did then the person who installed your cable TV was also a learned professional.

SOMF ¶9 uses terms like "CAD" (Computer Aided Design), Auto CAD (Another version of CAD) Microsoft Office (which we all have on our computers), and Adobe Acrobat Professional (which we all either have, or at least downloaded the free reader from). So basically the Plaintiff installed software, which we all have done, especially Microsoft Office. It then uses the words "end-user requirements" to indicate that he was not pirating the software, but just means you click to accept the terms and conditions, like any software makes you do. It then tells you that he had to keep the software updated. That means clicked install update when the bubble came up on the

screen. It says he installed drivers, which anyone who has ever bought a printer and installed it, or any device that comes with a disk, has done. Finally, it says that he would make requests for the licenses for these programs, so he would not have to pirate the software, and when the business wanted to steal software he was charged with figuring out how to break the law. None of that would require specialized knowledge gained through formal intellectual training.

SOMF ¶10 says he could operate a DVR, tapes and a locked box to keep the tapes in. Unlocking a box, putting a tape in it, and then locking it again, does not require specialized knowledge, nor does operating a DVR.

SOMF ¶11 & 12 basically says Plaintiff figured out how to install a computerized time clock, and change the time twice a year for daylight savings.

SOMF ¶13 says Plaintiff knew how to run Norton Anti-Virus, or whatever anti-virus software they used. Again, these are not complex tasks, just the installation of software, adjusting the time on it twice a year, and the running of anti-virus software.

SOMF ¶17 says that he backed up the server, which means he made copies of the network, which again requires software and not special training. He also checked whether the security cameras and the Wi-Fi worked, requested keys for new employees and kept track of who had them (which seems like an HR or maintenance issue), took questions from employees who could not figure out how to install their printers or use Microsoft Office, and looked stuff up in a database. None of this requires specialized knowledge gained through formal education.

SOMF ¶19 actually contends that that activating an alarm system, checking if the security cameras are on, and assigning new employees email addresses, requires specialized knowledge, or a computer professional.

12

SOMF ¶¶ 18 & 20 are similarly complexly worded, and repetitive but mean he did menial labor, like making copies of hard drives, and handled the Windows Exchange Server for email, which just means he installed Office's Network software and opened an account. He also assigned logins for people to use their computers. All tasks a secretary could do, requiring no specialized knowledge.

SOMF ¶21 says Plaintiff would occasionally help troubleshoot computer problems, and sometimes solved them. Unless they involved creating software, there was not the level of specialized knowledge needed for the computer employee or learned professional exemption.

SOMF ¶ 22 says Plaintiff learned on the job to detect whether there was a catastrophic failure and everything computerized stopped working, which was probably also the case for anyone working on something computer based.

### III: THE PLAINTIFF IS NOT EXEMPT UNDER THE COMPUTER PROFESSIONAL EXEMPTION

Wisely, this District requires the filing of a Statement of Material Facts, to support a summary judgment motion. The summary judgment motion, is dependent on those facts being determinative of any material issue that a reasonable fact-finder could find in favor of the non-moving party on. In this case, the Plaintiff has broken down what the Statement of Material Facts really says above. It would be a waste of time and this Court's time to go statement by statement to, repetitively, prove the point that the Plaintiff was the only computer literate person in a factory, and not the Cuban Bill Gates. A general analysis of the law and facts will suffice.

Knowing how to do something, and being a professional in the field are two different things. They are two different things even if you are paid for what you do, and the only one at your job who can do it. You may know how to play basketball, but that is not the same as being in the

13

NBA. Similarly, knowing how to bandage a wound, does not make someone a doctor. Knowing how to do your own taxes, does not make you a CPA. Being great at helping people with their problems, is not the same as being a psychologist. Being a drug dealer, is not the same as being a pharmacist.

The Defendant's motion depends on the statement on the bottom of page 14, and top of page 15. "As such it is apparent that these responsibilities, which include development, analysis, creation, and testing of computer systems and programs fall within the confines of the computer exemption contemplated by the FLSA, that these duties were his primary duty, and he enjoyed independent discretion to perform these duties." D.E. 98 pg. 14-15. If this statement is a statement that a reasonable fact-finder could disagree with, then the Plaintiff is not exempt, under the Computer Professional Exemption. This statement is not only debatable, but blatantly false. The Defendant defines computer programming as cutting and pasting data into Excel Spreadsheets. *See,* (*Baro and Fanabria depo* at 24:5-25 & 25:1-6).

The Defendant fails to name a single program created by the Plaintiff. Microsoft Office, CAD, AutoCAD, and Adobe Professional, were not created by the Plaintiff. Autodesk Inc., is the creator of CAD and AutoCAD, Microsoft obviously created Microsoft Office, and Adobe Created Adobe Professional. Namely because the Defendant thinks creating a computer program consists of cutting and pasting data into an Excel Spreadsheet. The programs were not developed, nor tested by the Plaintiff. The only analysis, testing and development you can attribute to Plaintiff is if you consider checking the box that consents to sending your crash report data to Microsoft, AutoDesk and Adobe, which the real creators/developers analyze to improve the next version. If that counts than 70% of the people who use these programs would properly be categorized as computer professionals, including my grandmother, and thirteen-year-old cousin.

The Defendant pretends like there is controlling Eleventh Circuit Precedent on the issue of The Computer Professional Exemption. However, *Bergquist v. Fidelity Information Services, Inc.*, 197 Fed. Appx. 813 (11th Cir. 2006) is not about the computer exemption at all. It is decision about a plaintiff's contention that Federal Rule of Civil Procedure 8(c) was violated because the defendant did not properly plead the defense in its answer. The only holding of The Court was that a tenuous reading of the amended complaint, and propounded discovery put the Plaintiff on adequate notice that the defense was to be asserted.

Hence, the statement in the Defendant's Motion for Summary Judgment that "In *Bergquist*, the Eleventh Circuit recognized an employee was exempt under the computer exemption when he planned out a program, tested a program, and completed the general maintenance of a program," is not at all the holding of the Eleventh Circuit. [D.E. 98 pg. 15-16]. The Eleventh Circuit only addressed the issues of pleadings under Fed.R.Civ.Pro. 8(c).

In the Middle District version of the case, *Bergquist v. Fidelity Information Services*, *Inc.*, 299 F.Supp.2d 1320 (M.D. Fla. 2006), the court does not hold that "an employee was exempt under the computer exemption when he planned out a program, tested a program, and completed the general maintenance of a program." [D.E. 98 pg. 15-16]. The court found that a programmer using Java Script and other computer languages to create original software programs, as part of a team of programmers, was an exempt employee. Furthermore, the Court based part of its grant of summary judgement, on the basis that during the plaintiff's deposition he admitted he met the definition of an exempt employee, in multiple ways, and multiple times. *See,* Bergquist, 299 F.Supp.2d 1320, 1330-1332, (2006). The Plaintiff repetitively admitting coverage, and the opposition to the Summary Judgment motion in the Middle District being mainly related to

Fed.R.Civ.Pro 8(c), is probably why the only issue appealed to the Eleventh Circuit was Fed.R.Civ.Pro. 8(c).

Furthermore, The Defendants contend that *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1318, (S.D. Fla 2005) holds;

> "holding Plaintiff, a network engineer, was an exempt employee pursuant to the FLSA's computer exemption where his responsibilities included 'comprehending and understanding abstract ideas … and understanding of network characteristics and the standards that are used in the network … knowledge of routing and switching… consulting with employees on network issues, designing software and implem4enting to system, determining network equipment, and making recommendations regarding hardware and software."

[D.E. 98 pg. 15]

Literally, every word in that paragraph appears somewhere in the decision, but it is not what the court held. The court was evaluating the person who designed and implemented large scale network applications and installations for a broadband service provider and its large commercial customer base. The Plaintiff was also a professor in a certification program for CISCO training, and both provided, and received, highly specialized degrees/certifications, in advanced large-scale networking applications. Meaning the facts of the case at bar, that Plaintiff set up Wi-Fi, made sure the security cameras worked, installed software, made copies of a server hard drive, and controlled the lockbox where the tapes for the cameras were kept, completely different from the facts that the Court in Bagwell ruled on. The Court's actual holding in regards to the Computer Professional Exemption, was fact based, and below;

> "Employees who qualify for the computer professional exemption are highly-skilled in computer systems analysis, programming, or related work in software functions. 29 C.F.R. § 541.303(c). The Eleventh Circuit has held that "before a particular position can qualify as one which climbs to the level of the professional

> exemption of section 213(a)(1), the duties of that position must call for a person who is in a learned profession with at least a college degree in a specialized type of learning...." *Dybach v. State of Fla. Dept. Of Corrections,* 942 F.2d 1562, 1565 (11th Cir.1991). Based on Plaintiff's background, education, certifications, teaching experience, and testimony, the Court finds that Plaintiff had expertise and skills in the areas pertaining to carrying out the above-listed duties. Plaintiff applied his highly specialized knowledge to his network engineering position with Florida Broadband on a regular basis. The Court finds that Plaintiff is a "skilled worker" as defined in 29 U.S.C. § 213(a)."

Bagwell, 385 F. Supp. 2d 1316, 1328 (2005)

In the case at bar, the Plaintiff is not highly-skilled in computer systems analysis, programming, or related work in software functions. The Plaintiff does not have a college degree in anything computer related, except for the fact that computers run on electricity. The Plaintiff taught employees how to sign into their computer, but that is not the same as teaching at Broward Community College in their Cisco Networking Academy Program, like the Bagwell Plaintiff did. Bagwell shows that the Plaintiff fell far short of the requirements of the Computer Professional Exemption.

Since there is no binding precedent on the Computer Professional Exemption, the Defendant then wrongly summarizes the Middle District of North Carolina, in its holding in *Campbell v. Kannapolicy City Sch. Bd. of Educ.*, 55 F. SUpp. 3d 821, 823-24 (M.D.N.C. 2014),

> "In *Campbell*, the US Court for the Middle District of North Carolina recognized an employee as computer exempt when he was responsible for monitoring the servers to make sure they were operating properly, and fix network issues, all without requesting approval for the majority of his duties. (citation above omitted) Similarly to the employee's responsibilities in *Campbell*, Plaintiff's responsibilities involved "maintain server configurations," (SOMF 9), as well as manage and coordinate the company data and voice communications network and related functions to including PCs, terminals and telephones, cable installation, network system planning, monitoring, testing and servicing, (SOMF 7) – with

>      independent discretion, including determining how to best handle
>      the Defendant's backup."

[D.E. 98 pg. 15]

This is a mischaracterization of the North Carolina Court's Opinion. Recognizing that there is no binding case law on the subject, the court spends nine pages to justify an employee's exemption based on a wide variety of factors, including, but not limited to, specialized training in networking, and network security, the management of a whole school district's computer network, other employees with lower salaries being responsible for PC terminals, telephones,[2] troubleshooting PC problems, installation of cabling, and the ability to come and go as that plaintiff wished, so he could work from home, which was his "independent discretion." *See,* Campbell, 55 F. Supp. 3d 821, (2014).

In the case at bar, the Plaintiff installed a wireless router, made sure the Wi-Fi worked, was in charge of issuing keys to employees, and do basic PC troubleshooting that the Plaintiff did not have to do in Campbell. The court found there being other employees responsible for the day to day troubleshooting/help desk, to be one of the most important factors in determining Campbell was exempt, citing no less than five cases to show the importance of the distinction. *See, Id.* at 826-830 & SOMF ¶ 17.

In Martin, 381 F.3d 574 (2004) the facts were similar to the case at bar, and the Court held Martin was not an exempted computer professional. Martin's job consisted of exercising independent judgment, installing and updating software, hardware and software upgrades, setting

---

[2] The Defendant repetitively talks about "voice data," "voice network" and telephones. "Voice data," and "voice network" seems to be Defendant's way of saying telephone system. However, without an allegation that there was a complex system designed to route phone calls over data lines, that Plaintiff designed, not the Internet Service Provider, none of the "voice data," "voice networks," nor "telephones" have anything to do with being a computer professional, nor learned professional.

up network terminals, checking computer cables, installing equipment, testing equipment and systems, and troubleshooting Windows problems. The court drew the distinction between being good with computers, and being a computer professional. The duties of Martin, were Plaintiff's duties as well. Meaning under <u>Martin</u>, Plaintiff is not an Exempted Computer Professional, just good with computers.

The difference is not, really that complex, and it is why there is so much verbiage in the Defendant's motion that is misquoted. Someone can be good at something, but not a professional. An office can rely on them for something, that they are good at, but still not be a professional. Someone can be the best reader of small print in an office, and therefore be told to read all the contracts, but they are not a lawyer. In this case, the Plaintiff was the security person, the computer literate person, the person who issued keys to employees, copied data into Excel Spreadsheets, did data entry, (*Baro and Fanabria depo* at 24:5-25 & 25:1-6), made sure to call someone if the alarm system stopped working, and backed up hard drives onto tapes stored in a special locked box, none of which required the skills of a computer professional, nor leaned professional.

Hence, Plaintiff was not exempt because he was not a computer professional. Furthermore, the Plaintiff is not exempt under a combination of the two exemptions that do not apply to him, which should go without saying.

Wherefore; Plaintiff moves that This Court deny the Defendants Amended Motion for Summary Judgment.

Respectfully Submitted,

J.H. Zidell, P.A.

>300 71st Street, Suite 605
>Miami Beach, Florida 33141
>Tel: (305) 865-6766
> Fax: (305) 865-7167
>*Attorneys for Plaintiff*
>
>By:  /s/ Joshua H. Sheskin
>Joshua H. Sheskin, Esq.
>Jsheskin.jhzidellpa@gmail.com
>Florida Bar Number: 93028

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on March 25, 2016.

>J.H. Zidell, P.A.
>300 71st Street, Suite 605
>Miami Beach, Florida 33141
>Tel: (305) 865-6766
> Fax: (305) 865-7167
>*Attorneys for Plaintiff*
>
>By:  /s/ Joshua Sheskin
>Joshua H. Sheskin, Esq.
>Jsheskin.jhzidellpa@gmail.com
>Florida Bar Number: 93028