UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-21229-CIV-ALTONAGA/O'Sullivan

RAMON ORTEGA, et al., )
)
   Plaintiff, )
vs. )
)
BEL FUSE, INC., et al., )
)
   Defendants. )
_____ )

**PLAINTIFFS RESPONSE TO DEFENDANT BEL FUSE, INC.S' STATEMETN OF UNDISPUTED MATERAIL  FACTS [D.E. 61]**

Comes Now, Plaintiff, by and through Undersigned Counsel, and hereby answers Defendant Bel Fuse, Inc.s' Statement of Undisputed Material Facts D.E. 61., as follows;

1. Denied. Mr. Ortega's Cuban training in electrical engineering in 1981 did not contain relevant courses in computer science covering hardware and software. The "hardware" and "software" for computers in 1981 is not relevant today. A 1981 Cuban electrical engineering degree is not indicative of training in software and hardware. Furthermore, 1995 training in VisualBasic is not a relevant course in hardware, nor software, but a program language translation tool. Training that in light of new computer languages, since 1995, and new computer applications, including the .NetFramework and Visual Studio, has become largely irrelevant.

2. Admitted. The Plaintiff learned the job that Defendants claim he was a learned professional in, on Google. Denied that the Plaintiff was Director of Information Technology in anything but title. Denied that trouble shooting or analyzing was any special skill or learned

professionally acquired knowledge. Denied that anyone was training the Defendant on the job.

3. Admitted

4. Denied in that IT Manager and Engineer II was anything other than a change in title to attempt to circumvent the FLSA.

5. Admitted that the job description states it is an exempt position, but not that the position is exempt. Admitted that the duties are in the job description, but denied that they were descriptive of the position, or required for the position that Mr. Ortega actually held.

6. Admitted, titles are irrelevant to FLSA exemptions.

7. Denied that the position required monitoring, testing and servicing, past keeping two Wi-Fi routers working. Denied that the positon required network system planning, as to any meaning of the term past connecting devices to a network.

8. Denied, the deposition cited to says that the recommendation was made and Defendant said no. See Ortega dep. 9:5-25 10:1-20. Denied, in that the defendant asked Mr. Ortega to illegally pirate software despite his recommendations to buy licenses and objections to breaking the law. (See Ortega dep. 27:1-25, 28:1-25).

9. Denied that Mr. Ortega used on the job training, self-study, and knowledge of any special kind to install standard software like Word. Denied that Mr. Ortega found workarounds, he installed software illegally and over his own objections because Defendants demanded such, and was unable to work around software that was regulated. (See Ortega dep. 27:1-25, 28:1-25). Denied that he installed software according to its end-user requirements because Defendants made him illegally install software. *See, Id.* Denied that Mr. Ortega ever produced or developed software, as there is literally no evidence that Mr. Ortega every

produced or developed software, but rather that Defendant thought cut and pasting data into an Excel spreadsheet was computer programming. (*Baro and Fanabria depo* at 24:5-25 & 25:1-6).

10. Admitted, Mr. Ortega knew how to lock and unlock the box where tapes were kept, denied that a problem with a lock box needed diagnosis and analysis. Denied that Mr. Ortega analyzed and diagnosed problems with the security cameras, as his job was only to make sure they were recording.

11. Denied, Plaintiff installed software to accomplish this system, he did not implement the process, nor integrate the process, he installed software to do so.

12. Mr. Ortega punch clock an hour forward, and an hour back for daylight savings, and installed the punch clock requested by his employer. Hence he did not implement the employers' system for timekeeping, and he was not responsible for anything other than that he assumed the responsibility to, twice a year, change the clock for daylight savings. The problem that is listed in the evidence to date, as far as the timeclock, is that it needed to be changed, like a watch or wall clock, for daylight savings.

13. Denied in that Mr. Ortega was not handling virus issues, as if he were coding firewalls, or corporate security software, he was running commercial anti-virus software that anyone could run.

14. Admitted, he was not always told what to do, as always is an absolute term.

15. Admitted

16. Admitted, the change in company ownership did not affect Plaintiff's non-exempt duties.

17. Denied, these are not facts but mischaracterizations of testimony and duties to make Plaintiff sound exempt. Properly characterized it should say that Plaintiff backed up the

server, which means he made copies of the network, which again requires software and not special training. He also checked whether the security cameras and the Wi-Fi worked, requested keys for new employees and kept track of who had them (which has nothing to do with the claimed exemptions), took questions from employees who could not figure out how to install their printers or use Microsoft Office, and looked stuff up in a database.

18. Denied. Properly characterized and in the context of the lines not cited around the deposition testimony, Plaintiff used Windows Backup to make copies of the Data Base, one for backup, and one in case employees messed up the Data Base.

19. Denied. This mischaracterizes the testimony of the deposition. It literally contends that testimony establishing Plaintiff activated the alarm system, checked if the security cameras were on, and assigned new employees email addresses, made him in charge of everything that ran on electricity. Furthermore, Defendants are claiming the Learned Professional Exemption and the Computer Professional Exemption apply to Plaintiff, hence being in charge of a security camera or alarm system, is not relevant to begin with.

20. Denied. This is a repeat of their paragraph 18. Hence, properly characterizing the testimony should read for both 18 & 20, Plaintiff did menial labor, like making copies of hard drives, and handled the Windows Exchange Server for email, which just means he installed Office's Network software and opened an account. He also assigned logins for people to use their computers. All tasks a secretary could do, requiring no specialized knowledge.

21. Denied. Properly characterized, from the perspective of not thinking that copying numbers into an Excel spreadsheet constitutes programming, this should read that occasionally the Plaintiff would sometimes help employees having trouble with their computers, which apparently mainly ran Microsoft Word, Adobe Acrobat, and an email program.

22. Denied. Properly characterized, in light of the non-specified cherry picked lines, this should read that Plaintiff knew if everything that involved a computer stopped working, which should be the case for anyone working on a computer at the business.

23. Admitted.

24. Denied.

25. Denied as to salary.

26. Denied as to salary.

27. Denied as to salary. This would mean his salary went down inexplicably in 2012 when he was allegedly moving up in the company and being promoted, according to the Defendants.

28. Denied as to salary.

29. Admitted. Wages not salary, as this states.

30. Admitted. Hence the overtime suit.

31. Denied. Then when he received almost five thousand less in 2012 than in 2011, he must have been demoted by this logic.

32. Denied, there was other overtime worked, beyond an hour per day, as alleged by the Statement of Claim, and Complaint.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted that his hours were reflected in his pay, which is evidence contradictory to numbers 25-31. Admitted that the exact number of hours are uncertain, denied that the Defendant kept accurate records of Plaintiffs hours. Admitted that Plaintiff can only

establish his exact hours by reasonable inference, approximation, circumstantial evidence, and an approximation.

Respectfully Submitted,

J.H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
 Fax: (305) 865-7167
*Attorneys for Plaintiff*

By:  /s/ Joshua H. Sheskin
Joshua H. Sheskin, Esq.
Jsheskin.jhzidellpa@gmail.com
Florida Bar Number: 93028

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on March 25, 2016.

J.H. Zidell, P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
 Fax: (305) 865-7167
*Attorneys for Plaintiff*

By:  /s/ Joshua Sheskin
Joshua H. Sheskin, Esq.
Jsheskin.jhzidellpa@gmail.com
Florida Bar Number: 93028
